STATE of Missouri,
Plaintiff–Respondent,

v.

Nathaniel A. CANNON,
Defendant–Appellant.

No. 52754.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 22, 1987.

Rehearing Denied Jan. 26, 1988.

---

**1.** The date was mentioned by the prosecutor on cross-examination of the dermatologist.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Mary Clare McWilliams, St. Louis, for defendant-appellant.

SIMON, Presiding Judge.

Defendant, Nathaniel A. Cannon, charged with second degree murder, was convicted by a jury in the Circuit Court of the City of St. Louis of voluntary manslaughter, § 565.023.1(1), RSMo (1986) (all further references shall be to RSMo (1986) unless otherwise noted), and armed crimi-

nal action, § 571.015.1. Defendant was sentenced to five years for voluntary manslaughter and to four years for armed criminal action, said sentences to run consecutively for a total term of nine years.

On appeal, defendant raises three points claiming that the trial court erred in: (1) denying his motion for judgment of acquittal at the close of all the evidence because the evidence was insufficient to support his conviction of voluntary manslaughter; (2) overruling his objection to the verdict directors because they confused the jury and misstated the law of accomplice liability; and (3) overruling his objection to instruction No. 9, verdict director on voluntary manslaughter, because it misinformed the jury of the penalty range. We affirm.

We note that defendant has not challenged his conviction for armed criminal action. However, "[a]rmed criminal action, in every case, requires the commission of an underlying felony." *State ex rel. Westfall v. Ruddy*, 621 S.W.2d 42, 44 (Mo. banc 1981). *See* § 571.015.1. Thus, were we to reverse the voluntary manslaughter conviction, the armed criminal action conviction would necessarily fall.

Viewed in the light most favorable to the verdict, the evidence adduced at trial showed the following: On May 5, 1985, defendant and a friend, Earl Hill, were involved in a scuffle with Derrick Binion, Michael Binion, and Donald Thomas. During the altercation, defendant was kicked in the back by Donald Thomas. That evening, defendant and Earl Hill decided to look for Donald Thomas. Defendant claimed that they wanted to scare Thomas for his earlier actions during the altercation. Both defendant and Hill had come armed with handguns.

Defendant and Hill drove to the street where Thomas lived, but because they did not know exactly where he lived, they got out of the car and started walking up and down the street looking for his house. The two eventually stopped in front of the house of Mrs. Dorothy Mays. When Mrs. Mays saw the two men sitting on the curb

in front of her house, she went outside and asked them to leave. A short while later, Mr. Calvin Mays, the victim, went outside. It appears that Mr. Mays took very good care of his automobile which was parked on the street in front of the house. Apparently, he wanted to make sure that defendant and Hill were not bothering his car.

Mr. Mays went to his car, took a baseball bat from the trunk, and approached defendant and Hill. Defendant and Hill drew their revolvers and opened fire on Mr. Mays. Defendant testified that he had a .357 Magnum revolver and that Hill had a nine millimeter automatic. Defendant testified that he and Hill fired into the air and that he had no intention of shooting or killing anyone. However, two eyewitnesses testified that defendant and Hill did not fire into the air, but aimed their guns in the direction of the victim as he approached.

The testimony of the witnesses indicates that numerous shots were fired—five to eight shots followed by a pause of a minute or two and then another series of shots—approximately fifteen altogether. The testimony of the witnesses and defendant indicate that both defendant and Hill fired the first round of shots and that Hill, alone, fired the second round of shots. During the pause between the rounds of gunfire, defendant passed something to Hill. An eyewitness testified that he saw a gun exchange hands. The testimony of the witnesses indicates that the victim was not close to defendant or Hill at either time that he was fired upon and that he started running away each time the shooting began. However, one of the bullets fired from the nine millimeter automatic struck the victim causing his death. It appears that the fatal shot was fired during the second round of gun fire.

After the shooting, defendant and Hill fled. A witness testified that he was walking to his aunt's house when he heard the shots fired. A short while afterward, he saw two men come running out of a backyard in the area. Edwards testified that the two men came out of the yard in front

of him and that he continued walking behind them for awhile. He testified that the men stopped and he walked past, but was later overtaken by them again. He saw them leave the street and follow in the same direction by using an alley. Finally, defendant ran from the alley and stopped the witness. Defendant began questioning him as to his name, where he was coming from, and where he had been. Suddenly defendant drew a hand gun on him. The witness testified that it was an "automatic." He turned and ran and escaped unharmed.

The first point of error alleged by defendant is the trial court's overruling of his motion for judgment of acquittal at the close of all evidence. Defendant claims that the evidence was insufficient to support his conviction for voluntary manslaughter. Defendant admits that his motion for new trial failed to mention such error. Thus, defendant failed to preserve this issue for review on appeal. *See State v. Hanes,* 729 S.W.2d 612, 615 (Mo.App. 1987). Nevertheless, defendant claims that we should review for plain error because the state failed to make a submissible case as to his guilt of voluntary manslaughter. Under plain error review, we reverse only for those errors which so substantially affect the accused's rights that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *Id.* at 616. "It is manifest injustice for a trial court to submit a case to the fact finder on evidence insufficient to make a submissible case." *State v. Nations,* 676 S.W.2d 282, 283 (Mo. App.1984). Hence, we review for plain error.

■ Defendant, charged with second degree murder, was convicted of voluntary manslaughter under § 565.023.1, which provides in pertinent part:

1. A person commits the crime of voluntary manslaughter if he:

(1) Causes the death of another person under circumstances that would constitute murder in the second degree under subdivision (1) of subsection 1 of section 565.021, except that he caused the death under the influence of sudden passion arising from adequate cause.

.      .      .      .      .

2. The defendant shall have the burden of injecting the issue of influence of sudden passion arising from adequate cause under subdivision (1) of subsection 1 of this section.

.      .      .      .      .

Subdivision (1) of subsection 1 of § 565.021 provides:

1. A person commits the crime of murder in the second degree if he:

(1) Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person;

Reading §§ 565.023 and 565.021 together, it is clear that in order to be convicted for voluntary manslaughter one must either (1) knowingly cause the death of another person, or (2) with the purpose of causing serious physical injury to another person, cause the death of another person. This alone is sufficient to convict for second degree murder. However, if one causes the death of another—either knowingly or with the purpose of causing serious physical injury—under the influence of sudden passion arising from adequate cause, one may not be guilty of second degree murder but may be guilty of voluntary manslaughter.

In the instant case, the jury was charged under Instruction No. 7, voluntary manslaughter verdict director, MAI–CR2d 13.08/2.12 (modified), that defendant could be convicted of voluntary manslaughter if "defendant or Earl Hill knew or was aware that his conduct was causing or practically certain to cause the death of Calvin Mays," and if "with the purpose of promoting or furthering the commission of voluntary manslaughter, the defendant acted together with or aided Earl Hill in committing that offense." Hence, the pivotal issue is whether the evidence was sufficient to sub-

mit the case to the jury on the theory of defendant's accomplice liability for the death of Calvin Mays.

The standard for accomplice liability is set forth in § 562.041.1(2):

A person is criminally responsible for the conduct of another when either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

Under § 562.016.2, "A person 'acts purposely', or with purpose, with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result."

In reviewing the evidence as it relates to the submissibility of defendant's case on accomplice liability, we are guided by the following principles:

All persons who participate in the commission of an offense are principals and the act of one is the act of all; all persons who act together with a common intent and purpose are equally responsible therefor, and a person who aids and abets the commission of a criminal offense is guilty as a principal. Evidence sufficient to justify the jury in finding that the defendant did in any way aid, abet or encourage another in the commission of an offense is sufficient to support a conviction. Furthermore, while evidence that an accused had an opportunity to commit an offense which merely raises a suspicion is insufficient to sustain a conviction, yet any evidence showing any form of affirmative participation is sufficient. Proof of conduct before, during or after the offense are circumstances from which participation in the offense may be inferred.

*State v. Gamache,* 519 S.W.2d 34, 39–40 (Mo.App.1975).

■ Here, the evidence viewed in the light most favorable to the verdict shows that the victim, armed with a baseball bat, was approaching defendant and Hill at the time he was first fired upon by defendant and Hill. Testimony by two eyewitnesses established that defendant and Hill aimed their guns and fired in the direction of the victim as he approached. The testimony further established that the victim was not close to the defendant or Hill at the time he was initially fired upon and that he started to run away once the shooting began. The testimony shows that neither defendant or Hill retreated after the first series of shots, but remained for a minute or two until the victim returned and then fired upon him again. The record shows that the victim was shot by a bullet fired from a nine millimeter automatic and that defendant passed Hill a gun in between rounds of fire.

Although defendant may not have fired the deadly shot, he stood alongside Earl Hill, firing shots in the direction of the victim during the first round of gun fire. During the pause, defendant passed Earl Hill a gun. It is true that defendant testified that he had the .357 magnum revolver and that Earl Hill had the nine millimeter automatic, but this was for the jury to decide. The jury may have believed that the nine millimeter automatic belonged to defendant. There was testimony that defendant had an "automatic" after the shooting occurred. The jury could have properly found that defendant passed Earl Hill the nine millimeter during the pause between the rounds of fire. We conclude that the foregoing constitutes sufficient substantial evidence to justify submission of the case to the jury and to sustain a conviction for voluntary manslaughter.

In his second point, defendant claims that the trial court erred in overruling his objections to the giving of Instructions Nos. 5, 7 and 9 because said instructions confused the jury and misstated the law of accomplice liability.

■ We note initially that defendant has failed to set forth Instructions Nos. 5 and 9 in the argument portion, or in any portion of his brief. Rule 84.04(e) requires that an

appellant, raising as error the trial court's giving of an instruction, must set out the instruction that he alleges should not have been given in the argument portion of his brief. *State v. Coats*, 668 S.W.2d 119, 120 (Mo.App.1984). Failure to comply with the mandate of Rule 36.06(c) preserves nothing for review by the Court of Appeals. *State v. Swink*, 620 S.W.2d 63, 64 (Mo.App.1981). Therefore, the only allegation of instructional error preserved for review is directed to Instruction No. 7. In any event, had defendant complied with the requirements of Rule 30.06(c) with respect to Instructions Nos. 5 and 9, we find no prejudicial error in the giving of the instructions. He was not convicted of second degree murder, the charge embodied in Instruction No. 5. He was convicted of the lesser offense of manslaughter and therefore he may not complain of any alleged error as to Instruction No. 5. *See State v. Frank*, 639 S.W.2d 209, 211 (Mo.App.1982). The same is true for Instruction No. 9 on involuntary manslaughter. Ordinarily a defendant cannot object to instructions concerning an offense of which he was not convicted. *Id.*

Instruction No. 7, MAI–CR2d 13.08/2.12 (modified), in pertinent part, charged the jury:

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with him with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on May 5, 1985, in the City of St. Louis, State of Missouri, *the defendant or Earl Hill caused the death of Calvin Mays by shooting, him,* and

Second, that *the defendant or Earl Hill knew or was aware that his conduct was causing or was practically certain to cause the death of Calvin Mays,*

(emphasis added).

We recognize that defendant was tried on a theory of accomplice liability. We also are aware that MAI–CR 2d 2.12 Notes on Use 6, Example (a), requires that where the evidence shows that conduct of the offense was committed entirely by someone other than the defendant and the sole basis for defendant's liability is his aiding the other person, then all the elements of the offense should be ascribed to the other person and not to the defendant. *See State v. Scott*, 689 S.W.2d 758, 760 (Mo. App.1985).

Assuming that Earl Hill fired the fatal shot, it does not follow that reversible error was committed. In *State v. Van Black*, 726 S.W.2d 429 (Mo.App.1987), the defendant was convicted of arson in the second degree. The instructions authorized a finding of guilty "if the jury found the defendant or Danny Warden damaged an inhabitable structure by starting a fire and 'that with the purpose of promoting or furthering the commission of arson in the second degree, the defendant acted together with or aided Danny Warden in committing that offense.'" *Id.* at 430. The evidence showed that only Danny Warden was involved in starting the fire. The defendant appealed his conviction arguing, inter alia, that under Notes on Use 6, Example (a) to MAI–CR 2d 2.12, all the elements of the offense should have been attributed to Danny Warden. The court stated:

Assuming that to be true, reversible error is not necessarily established. The Notes on Use to MAI–CR 2d 2.12 contain the following self-limitation:

NOTE: Any variation in ascribing the elements of an offense to the defendant or to the other person or persons and any variation in the selection of alternatives in the paragraph following 'then you are instructed that the offense of [name of offense] has occurred ...' shall not be deemed reversible error in the absence of prejudice.

Under the verdict directing instruction, the defendant could be found guilty if he caused the fire. Or, he could be found guilty if Danny Warden caused the fire and the defendant acted together with or

aided Danny Warden. Under the circumstances of this case, the jury could not have been misled by that instruction. The defendant was not prejudiced by that instruction. Cf. *State v. Patterson*, 649 S.W.2d 925 (Mo.App.1983). Also see *State v. Fant*, 714 S.W.2d 916 (Mo.App.1986); *State v. Reasonover*, 714 S.W.2d 706 (Mo.App.1986); *State v. Barnes*, 708 S.W.2d 270 (Mo.App.1986).

*Id.* at 431.

Applying the *Van Black* rationale to the instant case, we conclude that defendant was not prejudiced by Instruction No. 7. Either he shot and killed Calvin Mays or he acted together with Earl Hill in shooting Calvin Mays.

■ Nevertheless, defendant claims that Instruction No. 7 was erroneous because it failed to charge the jury that he could not be convicted if Earl Hill acted in self-defense. Without deciding whether or not such an omission is erroneous, we conclude that under the facts of this case defendant was not prejudiced. Based on the instruction given and the verdict, it is clear that the jury found that defendant had not acted in self-defense. Here, the evidence supporting the submission of self-defense on the part of Earl Hill was identical to the evidence presented to support defendant's claim of self-defense. Because of the identical nature of the evidence, it is clear that even if the court had instructed on the issue of Earl Hill's self-defense, the verdict would have been the same. Therefore, defendant was not prejudiced.

In his final point on appeal, defendant asserts that the trial court erred in overruling his objection to Instruction No. 9 on involuntary manslaughter because said instruction contained an incorrect penalty range. Instruction No. 9 gave the penalty range for involuntary manslaughter as 5 to 15 years when the maximum range is 7 years.

As noted in the second point, defendant has failed to comply with Rule 30.06(e). He did not set forth Instruction No. 9 in the argument portion of his brief and

therefore has failed to preserve the issue for review.

■ However, assuming the alleged error had been properly preserved, defendant's point is without merit. The same issue was addressed in *State v. Dickerson*, 646 S.W.2d 884 (Mo.App.1983). There, defendant was convicted of robbery in the second degree. The trial court apparently incorrectly instructed the jury on the punishment it could assess if they found the defendant guilty of the lesser offense of stealing. The defendant appealed claiming error in the instruction. In addressing the defendant's claim the court concluded:

> If the instruction stating the punishment for stealing was erroneous, appellant was not prejudiced as he was not convicted of stealing. *There is no prejudicial error when the jury is not correctly advised of the range of punishment for an offense but the defendant is not convicted of that offense.* *State v. Pitchford*, 556 S.W.2d 57, 59 (Mo.App. 1977); *State v. Morse*, 514 S.W.2d 375, 377 (Mo.App.1974).

*Dickerson*, 646 S.W.2d at 884–85 (emphasis added). Point denied.

Judgment affirmed.

CRANDALL and GRIMM, JJ., concur.