**STATE of Missouri,**
**Plaintiff–Respondent,**

v.

**Ann Marie DULANY,**
**Defendant–Appellant.**

**No. 70914.**

Supreme Court of Missouri,
En Banc.

Nov. 14, 1989.

As Modified on Denial of Rehearing
Dec. 12, 1989.

Springfield, Missouri, were Conn's aunt and uncle. Defendant admitted being present at the robbery of the Blades and that the Blades died as a result of the robbery. Mrs. Blades died from a blow to the head from an unknown blunt instrument. Mr. Blades died from smoke inhalation. Chemicals consistent with the roofing compound used to burn the victims and their house were found on defendant's clothing. Goods taken from the Blades home were sold by defendant in Texas. In addition to the physical evidence, the jury had before it two prior statements made by defendant to the police, defendant's trial testimony and the deposition of another participant, Richard Paul Schmitt.

Defendant's trial testimony, in part, was as follows: On June 15, 1984, defendant, Ronnie Conn, Paul Schmitt and Charles Schmitt left Mt. Vernon, Illinois, intending to pick up Conn's children in Lawton, Oklahoma. As they were leaving Mt. Vernon, Conn bought two cans of highly flammable roofing cement which they took with them. The four drove to Springfield, Missouri where they checked into a motel. Conn, defendant and Paul Schmitt drove by the Blades home on the evening of June 15, 1984, but did not stop because they thought no one was home. On the way to the house Conn said he was going to kill the Blades for refusing to loan him bail money in April of that year.

The following day, June 16, 1984, Conn and defendant again drove by the Blades' home. They saw Mr. Blades mowing his lawn, but did not stop. Later that evening, approximately 9:45 p.m., Conn, defendant and Paul Schmitt returned to the Blades home. This time Conn took the roofing cement with them. Before entering the house, Conn told defendant, "Whatever happens just happens." The Blades met the trio at the door and allowed them to enter. Once inside, Conn and Mr. Blades began arguing over the location of property left in Springfield by Conn's mother. Conn struck Mr. Blades, knocking him down. Conn tied Mr. Blades' hands behind his back with a rope defendant had obtained from the truck. Conn, defendant

---

Melinda K. Pendergraph, Tim Wynes, Columbia, William J. Stewart, Bolivar, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

BILLINGS, Judge.

Defendant Ann Marie Dulany was tried and convicted of two counts of capital murder, as defined by then § 565.001, RSMo 1978 (repealed July 1, 1984), and sentenced to two concurrent life sentences without eligibility for parole or probation for fifty years. The court of appeals reversed and remanded the case for a new trial, finding insufficient evidence to support the verdict and instructional error. Transfer to this Court was granted. The Court finds the evidence sufficient and no error calling for reversal and affirms the trial court in this direct appeal. The Court also affirms the trial court's denial of post conviction relief. Affirmed.

The evidence showed defendant was a prostitute and girlfriend of Ronnie Conn. The victims, Willard and Viola Blades, of

and Schmitt made a fruitless search of the house for valuables. Conn told Mr. Blades he knew he kept a safe filled with large amounts of money and a gun collection in the house, and if Mr. Blades did not tell Conn where they were, Conn would kill him.

The three continued to search the house. Mr. Blades told Conn the location of two guns, one in the bedroom which Conn retrieved and one under the couch in the living room, which defendant located. Mr. and Mrs. Blades were then seated on a couch where defendant held a gun on them while Conn and Schmitt continued the search. When no money or guns were found, Conn went to the truck and returned carrying the two cans of roofing cement. Mr. and Mrs. Blades were taken into the bedroom and made to lie on the bed. Their hands and feet were bound, then both were bound to each other.

Defendant said Paul Schmitt was in the dining room when the Blades were taken to the bedroom. He then went outside to the truck and did not re-enter the house. She stated Conn had her search for material to gag Mrs. Blades but stopped when Conn said he did not need it. She then took two sacks containing some of the Blades' possessions to the truck. She said that when she returned Conn was "throwing this black stuff all over them and all over the bed." Conn told her to wait until he finished spreading the roofing cement from the bed to the kitchen door. She admitted carrying the empty cans to the truck and shortly thereafter the three departed. Conn, defendant and Paul Schmitt picked up Clarence Schmitt from the motel and traveled to Lawton, Oklahoma. The Schmitts returned to Illinois in the truck. Conn and defendant picked up Conn's children and traveled to Mexico and Texas before returning to Illinois.

Approximately 11:45 p.m., a couple driving by noticed a glow in the trees. They discovered the northwest corner of the Blades' home in flames. The bodies of the Blades were burned beyond recognition by the time the firemen could get to them.

■ Defendant's first point of error asserts reversible error for the submission of Jury Instructions No. 6 and 10 for capital murder in the disjunctive form. Both instructions combined the use of *MAI–CR 2d 2.12* and *15.01*. Instruction No. 6 was submitted as follows:

A person is responsible for her own conduct and she is also responsible for the conduct of another person in committing an offense if she acts with him with the common purpose of committing that offense, or if, for the purpose of committing that offense, she aids or encourages the other person in committing it.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First that on or about the 16th day of June, 1984, in the County of Greene, State of Missouri, Ronnie Lee Conn or Ann Marie Dulany caused the death of Viola M. Blades by striking her, and

Second, that Ronnie Lee Conn or Ann Marie Dulany intended to take the life of Viola M. Blades, and

Third, that Ronnie Lee Conn or Ann Marie Dulany knew that Ronnie Lee Conn or Ann Marie Dulany was practically certain to cause the death of Viola M. Blades, and

Fourth, that Ronnie Lee Conn and Ann Marie Dulany considered taking the life of Viola M. Blades and reflected upon this matter coolly and fully before doing so,

then you are instructed that the offense of the capital murder of Viola M. Blades has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fifth, that with the purpose of promoting or furthering the commission of capital murder of Viola M. Blades, the defendant Ann Marie Dulany acted together with or aided Ronnie Lee Conn in committing that offense,

then you will find the defendant guilty of capital murder.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the proposi-

tions submitted in this instruction, you must find the defendant not guilty of that offense.

Instruction No. 10 is identical to Instruction No. 6 except that it applies to Willard Blades and the cause of death is by burning rather than striking.

Defendant contends the disjunctive use of "Ronnie Lee Conn or Ann Marie Dulany" in paragraphs first, second, and third allowed the jury to find defendant guilty of capital murder if the jury believed only defendant committed the acts of burning and hitting the victims. In order to determine proper submission under the accomplice liability theory, the *Notes on Use of MAI–CR 2d* are helpful. *Note 6(c)* to *MAI–CR 2d 2.12* states:

> Where the evidence is not clear or conflicts as to which person (in a group including the defendant) engaged in the conduct constituting the offense.... ascribe the elements of the offense to the defendant *or* the other person or persons.

> Use the alternative "acted together with or aided" in the paragraph following "then you are instructed that the offense of [*name of the offense*] has occurred ..."

Thus, if the evidence is unclear as to which person committed the acts the disjunctive use is proper since the jury could find that either person committed the act. *Potter v. State,* 742 S.W.2d 231, 233 (Mo.App.1987). The purpose of the disjunctive instruction is to give the jury the opportunity to consider evidence that is unclear.

Defendant asserts there was insufficient evidence for the jury to find that only defendant committed the acts. This contention mirrors her second point, lack of the evidence to convict her of capital murder. The Court will address both together.

 . On review, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. *State v. Strickland,* 609 S.W.2d 392, 395 (Mo.banc 1980). In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Kelly,* 539 S.W.2d 106, 109 (Mo.banc 1976); *State v. Chunn,* 701 S.W.2d 578, 580 (Mo.App.1985). Viewed in this light, the Court finds sufficient evidence to support the jury's verdict and finding the disjunctive jury instructions were correct.

Defendant admitted holding a gun on the victims, getting rope from the truck to bind them and carrying out the empty cans of roofing cement which had been poured over the helpless couple and set ablaze. She admitted leaving Missouri immediately after these events, which is admissible to show a consciousness of guilt contrary to any theory of innocence. *State v. Rodden,* 728 S.W.2d 212, 219 (Mo.banc 1987). Defendant confessed to the police twice, each time naming a different person responsible for the killings but exculpating herself. Her original confession claimed Paul Schmitt killed the Blades. In a second confession and at trial she named Ronnie Conn as the killer. Exculpatory statements, when proven false or contradicted, evidence a consciousness of guilt and bear directly on the issue of guilt or innocence. *State v. Rodden,* 728 S.W.2d at 219.

The jury is not bound by defendant's self-serving explanation. *State v. Clark,* 494 S.W.2d 26, 29 (Mo.banc 1973); *State v. Rodney,* 760 S.W.2d 500, 504 (Mo.App. 1988). They are entitled to accept or reject any part of her admission or her testimony. *State v. Holt,* 592 S.W.2d 759, 774 (Mo.banc 1980); *State v. Simpson,* 718 S.W.2d 143, 146–47 (Mo.App.1986). Her credibility and the effects of conflicts or inconsistencies in testimony are questions for the jury. *State v. Overkamp,* 646 S.W.2d 733, 737 (Mo.1983); *State v. Pippenger,* 708 S.W.2d 256, 260 (Mo.App.1986). It is within the jury's province to believe all, some, or none of the witness' testimony in arriving at their verdict. *State v. Porter,* 640 S.W.2d 125, 127 (Mo.1982).

The direct and circumstantial evidence shows defendant and Conn were the last

persons in the house while the victims were alive. It is only defendant's self-serving statement that Conn struck the fatal blow to Mrs. Blades and poured the roofing cement on both victims and set them on fire. The jury could properly disbelieve defendant and find she committed these acts. Therefore, the Court finds no error in the disjunctive submission.

Even if there had not been enough evidence for the jury to find defendant committed the acts, the disjunctive submission would not have been reversible error. *State v. Johns*, 679 S.W.2d 253, 259–60 (Mo.banc 1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). When the aider is found to have purposely aided in capital murder and thus has the same intent of the active participant, all other things being equal, they are liable to the same degree as the active participant. *State v. White*, 622 S.W.2d 939, 945 (Mo.banc 1981), *cert. denied*, 456 U.S. 963, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). Defendant's admitted affirmative actions advanced the criminal enterprise and rendered her just as guilty as if she alone committed the acts. *State v. Barnes*, 708 S.W.2d 270, 273 (Mo.App.1986). Additionally, *Note 6(d)* of the *Notes on Use to MAI–CR 2d 2.12* contains the following self-limitation:

> NOTE: Any variation in ascribing the elements of an offense to the defendant or to the other person or persons and any variation in the selection of alternatives in the paragraph following "then you are instructed that the offense of [*name of offense*] has occurred...." shall not be deemed reversible error in the absence of prejudice.

This case is similar to *State v. Van Black*, 726 S.W.2d 429 (Mo.App.1987), and *State v. Cannon*, 744 S.W.2d 820 (Mo.App. 1987). In *Van Black* the defendant hired another to burn his house for a percentage of the insurance. The evidence showed defendant placed items in the house used to start the fire but that the actual fire was started by the other person. The jury instruction given was in the disjunctive form of *MAI–CR 2d 2.12*. The court held:

> Under the verdict directing instruction, the defendant could be found guilty if he caused the fire. Or, he could be found guilty if Danny Warden caused the fire and the defendant acted together with or aided Danny Warden. Under the circumstances of this case, the jury could not have been misled by that instruction. The defendant was not prejudiced by that instruction.

*State v. Van Black*, 726 S.W.2d 429, 431 (Mo.App.1987).

The defendant in *Cannon* was charged under an accomplice liability theory with second degree murder. The evidence showed defendant and another person shot one round at the victim but only the co-defendant shot the second round. The victim died from wounds caused by the second round. There was conflicting testimony as to whose gun actually killed the victim. The court held submission of *MAI–CR 2d 2.12* in the disjunctive not prejudicial. The jury could have found that either defendant shot and killed the victim or that he acted together with his co-defendant to kill the victim. *State v. Cannon*, 744 S.W.2d at 826.

Under the facts of the present case, no prejudice could result from the disjunctive submission because the jury could only find defendant guilty if it found she committed the crime or if she acted together with or aided Ronnie Conn to commit the elements of the crime.

It is asserted that paragraph fourth of Jury Instructions No. 6 and 10 is in error because there is no evidence that she participated other than as an accomplice. What has been said above would amply support a finding that she was a principal, and so the contention is without merit. The prosecutor in submitting paragraph fourth in the conjunctive assumed a higher burden than is required by *MAI–CR 2d 2.12*, but any such assumption could not prejudice the defendant.

Defendant's final point of error challenges the admission of evidence which she asserts was the fruit of an unlawful pretextual arrest. The evidence in ques-

tion included defendant's notebook, pawn-shop tickets for items taken from the Blades' home, defendant's clothing on which the chemical residue similar to the roofing cement was found and her two statements made to the Mt. Vernon, Illinois, police.

Defendant voluntarily accompanied the Mt. Vernon police to the police station. While at the station, she was arrested on a felony charge of hindering prosecution filed in Greene County, Missouri that same day. The charge stemmed from defendant furnishing Conn with transportation and money to escape arrest on a charge unrelated to the Blades' robbery and murder. A Greene County Circuit Judge issued a probable cause warrant for defendant's arrest after the charge was filed. The Mt. Vernon police were first informed of the warrant's issue by telephone and later received telex verification of the warrant.

■ Pretextual arrests in order to search for evidence are illegal and evidence procured as a result of such searches is inadmissible. *State v. Blair*, 691 S.W.2d 259, 262–63 (Mo.banc 1985), *cert. dismissed*, 480 U.S. 698, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1987). There is nothing in this record that indicates the Mt. Vernon police knew that the hindering charge was fabricated or that the warrant issued was not based on probable cause. The Illinois arrest was valid, occurring only after notification by Missouri police that an arrest warrant had issued based on an outstanding felony charge. The law in the state where an accused is arrested is to be applied in determining whether an arrest is legal or illegal. *Keeny v. Swenson*, 458 F.2d 680, 683 (8th Cir.1972), *cert. denied*, 409 U.S. 1027, 93 S.Ct. 468, 34 L.Ed.2d 321 (1972).

An Illinois peace officer may arrest a person when he has reasonable grounds to believe that a warrant for the person's arrest has been issued, either in the State of Illinois or in another jurisdiction. *Ill. Ann.Stat. ch. 38, para. 107–2(1)(b) (Smith–Hurd Supp.1989)*. The telephoned information received by the Illinois police from the Missouri officers that a warrant

had been issued, plus teletype confirmation of the existence of the warrant was sufficient to give the police officers probable cause to arrest defendant. *People v. Wolgemuth*, 69 Ill.2d 154, 13 Ill.Dec. 40, 43, 370 N.E.2d 1067, 1070 (1977), *cert. denied*, 436 U.S. 908, 98 S.Ct. 2243, 56 L.Ed.2d 408 (1978). Because the arrest was lawful the articles seized and statements taken thereafter were not excludable as the fruits of the poisonous tree arising from an illegal arrest.

## POST–CONVICTION MOTION

■ Defendant also filed a motion for post conviction relief which was heard and denied by the trial court. That proceeding has been consolidated with this direct appeal.

Defendant asserts numerous instances where counsel was ineffective. Appellate review is limited to determining whether the findings, conclusions and judgment of the motion court are clearly erroneous. *Rule 29.15(j); Mallett v. State*, 769 S.W.2d 77, 79 (Mo.banc 1989). Defendant must show the performance of his trial counsel lacked the care and skill of a reasonably competent attorney rendering similar services under the existing conditions, and that defendant was prejudiced by counsel's performance. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo.banc 1987).

Defendant contends counsel was also ineffective because of the failure of counsel to introduce evidence supporting her defense of battered "wife" syndrome or Conn's absolute control of her. Duress is no defense to capital murder. *Section 562.071, RSMo 1986*. Defendant also claims ineffective counsel for failing to cross-examine two witnesses concerning their ill feelings for her, failure to call witnesses requested by defendant and limiting her trial testimony. These issues properly fall within trial strategy and cannot be said to have been unreasonable.

Defendant also asserts her defense was not adequately prepared, pointing to the failure of counsel to call expert and out of state witnesses and failure to take deposi-

tions. The movant court found trial counsel adequately prepared and fully participated in the defense of defendant. That finding was not clearly erroneous.

The failure of counsel to move to suppress evidence obtained after release of defendant's car to unauthorized persons was also cited for counsel's ineffectiveness. This claim fails because defendant did not meet her burden of proving the police violated her specific instructions for releasing the car. Defendant's claim of ineffectiveness due to a failure to move to suppress her prior statements also fails. A motion to suppress this evidence was submitted by defendant's trial counsel but was overruled by the court. In addition, these statements were admissible to rebut defendant's trial testimony. The movant court found no showing of prejudice on defendant's remaining claims: (1) denial of a preliminary hearing and change of venue; (2) delay of trial; (3) failure to poll the jury; and (4) failure to present the entire deposition of Richard Paul Schmitt. Under the two prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant must prove not only that counsel was ineffective but that she was also prejudiced by counsel's performance. The Court finds defendant failed to meet either burden.

Judgment affirmed.

BLACKMAR, C.J., ROBERTSON, RENDLEN, HIGGINS and COVINGTON, JJ., and NUGENT, Special Judge, concur.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.