STATE of Missouri, Plaintiff–
Respondent,

v.

Safrine Verna WILLHOYT,
Defendant–Appellant.

No. 17327.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 15, 1991.

Steven E. Marsh, Hulston, Jones, Gammon & Marsh, Springfield, for defendant-appellant.

Don W. Crank, Asst. Prosecuting Atty., Springfield, for plaintiff-respondent.

FLANIGAN, Chief Judge.

The trial court, after a non-jury trial, found defendant guilty of stealing, a class A misdemeanor, and she was sentenced to 90 days in the county jail. Defendant appeals.

Defendant's sole point is that the evidence is insufficient to support the conviction because (a) there was no proof of the corpus delicti of stealing, in that the state did not establish that any property had been appropriated from K–Mart without its consent, and (b) the state's case was based on circumstantial evidence, the evidence was inconsistent with defendant's guilt, and the evidence did not exclude every reasonable hypothesis of defendant's innocence.

The findings of the trial court in a jury-waived criminal case have the force and effect of a verdict of a jury. Mo. Const. art. I, § 22(a); *State v. Northern,* 472 S.W.2d 409, 411[3] (Mo.1971). Defendant's challenge to the sufficiency of the evidence requires this court to determine whether there is sufficient evidence from which a reasonable juror might have found her guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55[3] (Mo. banc 1989). We accept as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *Id.* This court considers any portions of defendant's evidence which would support a finding of guilty "because defendant, by putting on evidence, takes the chance of aiding the State's case." *State v. Johnson,* 447 S.W.2d 285, 287[2] (Mo.1969).

A person commits the crime of stealing if he appropriates property of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion. § 570.030.[1] "[P]roperty ... is that of another if any natural person, corporation, partnership, association, governmental subdivision or instrumentality, other than the actor, has a possessory or proprietary interest therein." § 570.010(9). "'Property' means anything of value, whether real or personal, tangible or intangible." § 570.010(10). "Appropriate" means "to take, obtain, use, transfer, conceal or retain possession of." § 570.010(2). "Deprive" means, among other things, "to withhold property from the owner permanently." § 570.010(7)(a).

The information alleged, in general, that the defendant, on May 22, 1989, in Greene County, appropriated property which was in the possession of K–Mart Discount Stores ("K–Mart") without the consent of K–Mart and with the purpose to deprive it thereof. The property so appropriated consisted of a nightgown, a jacket, a pair of slacks, and two blouses, all more specifically described in the information.

State's witnesses were K–Mart employees Tana Lannholm, Connie Mahan, and Thomas Faulkner, and Springfield police officers Bruce Scheiderer and Harold Smith. The sole defense witness was defendant.

Tana Lannholm, a sales clerk in the ladies' wear department, testified that on May 22, 1989, at the K–Mart store in Springfield, she saw defendant, "with a big flat purse," going through the ladies' wear department to the fitting room. Defendant was "only eight feet away." "The purse looked like it was empty." Defendant was carrying clothing that she was going to try on in the fitting room. When defendant came out of the fitting room, she had no

---

1. All references to statutes are to RSMo 1986, V.A.M.S.

clothing in her hands and Tana noticed that defendant's purse was full instead of empty. "The purse looked different than when she went into the fitting room."

After defendant came out of the fitting room, according to Tana, defendant "just went through ladies' wear and toward the front door. I watched her from the time I saw her go through ladies' wear all the way through the doors. She went out the front doors. She did not stop at any checkout counter in between. She did not approach me or make any attempt to pay me for anything. This happened around closing time, 9:45 or 10." She said the store was not very busy that night.

After Tana saw defendant go out the front doors she notified Connie Mahan, assistant manager, and told her what she had seen.

On cross-examination, Tana testified that defendant had K–Mart merchandise when she walked into the fitting room, clothing. "I saw her go into the fitting room with some K–Mart merchandise and the next thing I saw her outside the fitting room walking to the front door." Tana went to the house telephone near the front door to call Mrs. Mahan, and then saw defendant get into a car on the parking lot. "It did not take very long ... less than a minute." Asked how long it took Mrs. Mahan to get to the parking lot from the time Tana called her, Tana said, "[Mrs. Mahan] was right there. When we call them, they just like run to the front door."

Tana also testified on cross-examination that she assumed that defendant's purse was filled with the items she had taken to the fitting room. Tana testified that no other person was with defendant, and there were no other customers in the ladies' wear area.

Connie Mahan testified that, after talking with Tana, she asked Tom Faulkner to go outside with her. Tom and Connie approached the car in which defendant was sitting. The car was parked near the store entrance. Connie told defendant she wanted to check her bag, which was a large bag which defendant had in her lap. Defendant was sitting in the front seat on the passenger's side.

Connie said, "She did not hand me her purse. She continued to hold it for a minute and then informed me I was not going to check her purse. I told her I would not let her leave until I did check her purse. She stuck her purse down between her legs underneath the front seat, like concealing it to a degree. I did not see inside the purse until after the officers arrived. I saw her reach into the purse and take something out, merchandise, clothing. She began to pull it out of the purse and stick it under the seat in the same place where the purse was, to the side of the purse. She removed several items from the purse. We retrieved those items from the car." The items were state's Exhibit 1.

Exhibit 1, admitted without objection, consisted of a pair of slacks, a jacket, a nightgown, and two blouses, all with brand names and all fitting the descriptions contained in the information. Connie testified that the items comprising Exhibit 1 "came from our apparel department. I know that because I recognize the merchandise and they still have tickets on them identifying them as K–Mart merchandise."

Connie testified that when she encountered defendant in the car, defendant attempted to leave. Connie was holding the door open and defendant was trying to close the door. Defendant insisted that Connie was not going to check the bag. Defendant scooted over toward the driver's seat. The keys were in the ignition and Connie tried to reach in to get the keys. Defendant grabbed Connie's arm and there was a struggle. Defendant told Connie that the clothing she was removing from the purse belonged to her daughter. Defendant did not tell Connie the daughter's name, nor did defendant produce a sales slip.

On cross-examination, Connie testified that in her phone conversation with Tana, Tana said there was a shoplifting. "I asked Tana a couple of questions to verify she was accurate. I did not talk with her over a few seconds."

Tom Faulkner, a sales clerk, testified that he accompanied Connie to the car where defendant was sitting and that defendant refused to let Connie look in the purse. Connie told defendant, "I am Connie Mahan from K–Mart." Defendant told her that she was sick and to leave her alone. Faulkner said that defendant took several articles of clothing out of the bag and began to shove them under the driver's seat. Faulkner told defendant that it was stupid of her to be "pulling that out" and defendant said, "You're not seeing anything."

Faulkner identified state's Exhibit 1 as the articles of clothing which he pulled out from under the seat of the vehicle. "They all had K–Mart stickers on them." Faulkner also said, "There were no K–Mart bags in the car," and that defendant never offered to show a receipt for the items.

Officer Scheiderer testified that he responded to the call at K–Mart and that his partner arrested defendant. Scheiderer said, "I saw the items on the hood after they were recovered. There was a nightgown, a blouse or two, I believe there were more items." He also said the items had tags which "were not torn. When they are sold they are torn or taken apart."

Officer Smith testified that he interviewed defendant at police headquarters on March 23, 1989, after giving her the Miranda warnings. Defendant referred to the K–Mart clothing in the vehicle. "She told me that the clothing had been brought there by her girl friend with whom she had gone to K–Mart, one of two girl friends with whom she had gone to K–Mart. I then asked her for the name of the woman that put the clothing in the car and she refused to give me that name."

Testifying in her own behalf, defendant admitted being in the K–Mart store about 9:30 p.m. on May 22, 1989, and that she took a black purse into the store. She admitted looking at some clothing and that she "took some on back to the dressing room and tried them on." She admitted she made no purchase while in the store. She said, "Detective Smith asked me who the other ladies were and I declined to tell

him who they were." Defendant testified she went to K–Mart with her daughter Sherry and a friend Sharon. She said she had been sitting in the car about 10 minutes before Connie Mahan and Tom Faulkner came to the car.

In arguing her point, defendant states: The state failed to prove the essential element the clothing had been misappropriated or stolen by anyone. There was no evidence the tags should not have been on the clothing even if it had been paid for. There was no evidence K–Mart would have removed the tags upon purchase. While [Tana Lannholm] had seen defendant in the store with some type of clothing, there was no evidence, whatsoever, that clothing was the same clothing found in the car. Since there was a lack of essential evidence establishing anything unusual or abnormal about the absence of tags on the subject clothing, or that the existence of those tags proved the merchandise was appropriated without K–Mart's consent, the state failed to prove an essential element of its case and failed to prove the corpus delicti of stealing.

Defendant further argues: No one saw defendant remove any K–Mart merchandise from any display or shelf and conceal it. No one saw her walk to or out the front door with any merchandise. No one saw her take any merchandise and leave the store. No one testified any merchandise was missing or had been taken.

Defendant also says: Mrs. Mahan and Officer Scheiderer testified defendant denied taking the clothing but stated it belonged to her daughter. The state's evidence did not exclude the possibility the clothing had been purchased by someone hours, days or weeks earlier. The state's evidence did not exclude the possibility the clothing had been left in the car, after purchase or theft, by someone other than defendant. The fact no one else showed up to claim the property was consistent with the possibility it had been stolen by defendant's daughter and she wanted to avoid inquiry.

 The elements of stealing, a class A misdemeanor, are set forth in the fourth

paragraph of this opinion. Proof of the corpus delicti does not require proof of the criminal agency of the *defendant* but merely proof of criminal agency generally. *State v. Worley,* 375 S.W.2d 44, 46[2] (Mo.1964); *State v. Ziegler,* 719 S.W.2d 951, 954[1] (Mo.App.1986). Corpus delicti consists of two elements: (1) proof, direct or circumstantial, that the specific loss or injury charged occurred, and (2) *someone's* criminality as the cause of the loss or injury. *State v. Johnston,* 670 S.W.2d 552, 554 (Mo.App.1984); *State v. Ziegler, supra,* at 954.

■ In arguing that there was no evidence that the tags, found on the articles in state's Exhibit 1, would have been removed if the articles had been purchased, defendant overlooks, or sees fit to ignore, the testimony of Officer Scheiderer to the effect that when those articles are sold, the tags are "torn or taken apart." [2]

Defendant emphasizes some matters which some of the state's witnesses did not know or were not asked about, and minimizes the facts concerning which the witnesses gave positive testimony. In so doing, defendant fails to accord the state the benefit of favorable inferences supported by the evidence.

According to Tana Lannholm, defendant entered the fitting room carrying clothing that she was going to try on and emerged from the fitting room with no clothing in her hands. When defendant entered the fitting room, her big purse was "flat." When she emerged, her purse was "full" and "looked different." Upon leaving the fitting room, defendant went directly to the front door without stopping at the checkout counter. The clothes taken into the fitting room by defendant were K–Mart merchandise.

Tana testified: "I assumed that her purse was filled with items she took into the fitting room." Defendant has not challenged the validity of that assumption and, in light of the circumstances, the assumption seems reasonable. That testimony was elicited by the defense.

Alerted by Tana to the situation, Mrs. Mahan immediately went to the parking lot where defendant was sitting in a vehicle with a large purse in her lap. She refused to let Mrs. Mahan check her purse. Defendant put the purse between her legs under the front seat and pulled merchandise out of it. That merchandise, Exhibit 1, contained the various items of clothing which, according to Mrs. Mahan, were from K–Mart's apparel department. She said the articles "still" had the K–Mart tags on them.

Defendant was belligerent with Mrs. Mahan and Tom Faulkner. There was no K–Mart bag in the car, nor did defendant volunteer a receipt for the items. She attempted to conceal the articles comprising Exhibit 1. Although defendant told Mahan and Faulkner that the articles belonged to her daughter, defendant told Officer Smith that they had been brought there "by her girl friend," whose name she refused to divulge.

This court holds that the evidence is sufficient to support the finding of the trial court that defendant appropriated the articles comprising state's Exhibit 1, the property of K–Mart, with the purpose of depriving K–Mart thereof and without the consent of K–Mart.

The judgment is affirmed.

SHRUM, P.J., and MAUS, J., concur.

---

**2.** After giving that testimony, Scheiderer made two further statements. At that point, defendant's counsel stated: "We are bordering on hearsay again from the managers of K–Mart. I object." The court sustained the objection. It is not clear that the belated objection was directed to the quoted testimony. Counsel made no motion to strike.