**STATE of Missouri, Respondent,**

**v.**

**Jacob MCGINNIS, Appellant.**

**No. WD 69679.**

Missouri Court of Appeals, Western District.

Aug. 17, 2010.

Rosalynn Koch, Esq., Columbia, MO, for appellant.

Shaun J. Mackelprang, Esq., Robert J. Bartholomew, Esq., Jefferson City, MO, for respondent.

BEFORE DIVISION FOUR: LISA WHITE HARDWICK, C.J., Presiding, JAMES E. WELSH and GARY D. WITT, JJ.

LISA WHITE HARDWICK, Chief Judge.

Following a bench trial, Jacob McGinnis challenges the sufficiency of the evidence to support his conviction for first-degree burglary. He contends the State failed to prove the element of unlawful entry. For reasons explained herein, we affirm the judgment of conviction.

### FACTUAL AND PROCEDURAL HISTORY

On September 9, 2005, Jacob McGinnis arrived at the home of his best friend, Simon, and Simon's wife, Kathy,[1] to have a drink and watch a movie. Around 10:30 that Friday night, Simon and McGinnis left the home, and Kathy went to sleep.

McGinnis returned to the home at approximately 12:30 am and entered through the unlocked back door. He went into Kathy's bedroom and woke her up with news that Simon had been arrested after he was involved in a fight. McGinnis told Kathy to wait in the kitchen while he retrieved his cell phone from the car to see whether Simon had called.

McGinnis returned from the car with a shotgun and told Kathy he was in a lot of trouble. He said he had injured or killed three people. McGinnis said Simon had started to "freak out" after the fight, so he had pointed the gun at Simon, duct-taped him, and put him in the trunk of the car to keep him from calling the police. McGinnis then pointed the gun at Kathy and told her to walk into the bedroom. He again said he was in a lot of trouble but added that he wasn't going to die or go to jail without first having sex. McGinnis then raped Kathy at gunpoint.

After McGinnis left, Kathy contacted the Kansas City Police Department to report that her husband had been kidnapped and she had been raped by McGinnis. The police, following up on a report of a dead person, found Simon's body with multiple gunshot wounds near I–29 and Bethel Road. Investigators concluded that McGinnis had shot and killed Simon before he went to the home and raped Kathy.

McGinnis was arrested and charged with first-degree murder, forcible rape, first-degree burglary, and two counts of armed criminal action. He waived his right to a jury trial. Following a bench trial, he was convicted on all counts and sentenced to consecutive terms of life imprisonment without parole for murder, life imprisonment for forcible rape, fifteen years for burglary, and fifty years for each count of armed criminal action. In this appeal, McGinnis challenges only the sufficiency of the evidence to support the conviction for first-degree burglary.

### STANDARD OF REVIEW

Appellate review in this case " 'is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.' " *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993) (quoting *State v. Dulany,* 781 S.W.2d 52, 55 (Mo.banc 1989)). This court accepts " 'as true all the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary.' " *Id.* (*quoting Dulany,* 781 S.W.2d at 55). This standard for reviewing the sufficiency of the evidence applies in both court-tried and jury-tried cases. *State v. Sladek,* 835 S.W.2d 308, 310 (Mo. banc 1992).

### ANALYSIS

The offense of first-degree burglary occurs when a person "knowingly enters

---

1. The victims, "Simon" and "Kathy," are referred to by fictitious names in compliance with Section 566.226, Revised Statutes of Missouri (Cum.Supp.2009).

unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein" and one of the following three circumstances exists: (1) the person is armed with a deadly weapon; (2) the person causes or threatens immediate physical injury to any person who is not a participant in the crime; or (3) another person, who is not a participant in the crime, is present in the structure. Section 569.160.[2] To obtain a conviction for first-degree burglary, the State must prove each and every element of that offense beyond a reasonable doubt. *State v. Sellmeyer*, 108 S.W.3d 780, 782 (Mo.App.2003).

■ The State charged McGinnis with first-degree burglary based on the allegation that he "knowingly entered unlawfully in an inhabitable structure."[3] McGinnis contends his conviction on that charge must be reversed because the evidence was insufficient to prove that he entered Simon and Kathy's home unlawfully. Based on his close friendship with Simon, McGinnis asserts he had permission to enter the couple's home at will. Kathy testified at trial that McGinnis had regularly visited the home on Tuesdays and Fridays during the two-year period preceding the crimes. McGinnis argues the State failed to present any evidence that he entered the home unlawfully, which was an essential element of the first-degree burglary offense.

■ To prove that a defendant entered a building or inhabitable structure unlawfully, the State need only establish that the defendant "knew he had neither license nor privilege to enter." *State v. Jackson*, 896 S.W.2d 75, 77 (Mo.App.1995); *see*

§ 569.010(8). If the defendant had "the consent of a resident to enter the home, he is not guilty of burglary, regardless of what other crimes he may have committed therein." *State v. Cooper*, 215 S.W.3d 123, 126 (Mo. banc 2007). However, when such consent is obtained through deception or artifice, the entry is considered unlawful. *State v. Thomas*, 70 S.W.3d 496, 509 (Mo. App.2002); *State v. Rollins*, 882 S.W.2d 314, 315 (Mo.App.1994).

Here, the State presented evidence that McGinnis entered Kathy and Simon's home after midnight through an unlocked back door. He went to Kathy's bedroom and falsely told her that Simon had been arrested. He asked Kathy to wait in the kitchen while he retrieved his cell phone from the car to see if Simon had called. McGinnis came back into the home with a shotgun and falsely told Kathy that he had duct-taped Simon and put him in the trunk of the car. McGinnis then ordered Kathy into the bedroom, where he raped her at gunpoint.

Viewed in a light most favorable to the verdict, the evidence is sufficient to support a finding that McGinnis entered and then re-entered the home with the knowledge that he did not have permission to do so. First, McGinnis had shot and killed Simon before he went to the home after midnight. Despite his longstanding friendship with Simon, McGinnis could not reasonably have believed that he had permission to enter Kathy's home shortly after he had murdered her husband. Second, McGinnis entered the house at 12:30 a.m. through a back door and went directly to Kathy's bedroom. Even considering his frequent prior visits, there is no reason to assume that he would have permission to

---

2. All statutory citations are to the Revised Missouri Statutes (2000), as updated by the Cumulative Supplement (2009).

3. Notably, the State did not charge or allege that McGinnis committed first-degree burglary by knowingly remaining in the home unlawfully, as permitted under Section 569.160.

enter the home in the middle of the night, when he knew that Simon was not home, and proceed to a bedroom where Kathy was sleeping. Third, the only way that McGinnis was able to gain entry and then re-entry to the home was by deception. He initially lied to Kathy about his reason for coming to the home at that late hour, and then he lied about having to retrieve his cell phone from the car when he really intended to get his shotgun and use it to forcibly rape Kathy. McGinnis knew that if he told Kathy the truth about what had happened to Simon and what he intended to do to her, he would not be welcome in the home.

While McGinnis points out that Kathy never asked him to leave the home, this is not surprising given that he concocted a story suggesting her husband was in trouble, but still alive, so that she would be cooperative. Because McGinnis was masking his true intentions, any alleged consent was obtained only through artifice.

The court reached a similar conclusion in the first-degree burglary case of *State v. Thomas*, 70 S.W.3d 496, 502 (Mo.App. 2002), where the defendant knocked on the door of the victim's home and asked to use the phone. When the victim turned to get the phone, the defendant hit her on the head, grabbed her by the neck, and choked her to death. *Id.* at 502–03. As in the instant case, Thomas was charged with unlawfully entering the house rather than unlawfully remaining in the house. *Id.* at 508. On appeal, the defendant argued there was no evidence of unlawful entry because the victim allowed him to enter the home. *Id.* The court affirmed the conviction, concluding the "defendant never had a valid license to be in the victim's house because he gained access through artifice, i.e., by telling [the] victim that he needed to use her phone when that clearly was not his intention." *Id.* at 509.

As in *Thomas*, the evidence here was sufficient to establish that McGinnis knew he did not have permission to enter the home because he did so under false pretenses. Accordingly, the State proved the element of unlawful entry beyond a reasonable doubt. The circuit court did not err in finding McGinnis guilty of first-degree burglary. The point on appeal is denied.

## CONCLUSION

We affirm the judgment of conviction.

ALL CONCUR.