STATE of Missouri,
Plaintiff/Respondent,

v.

Shannon PARMELEY,
Defendant/Appellant.

No. 60854.

Missouri Court of Appeals,
Eastern District,
Division One.

April 13, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 12, 1993.

Application to Transfer Denied
June 29, 1993.

Deborah B. Wafer, St. Louis, for defendant/appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

REINHARD, Judge.

Defendant appeals his convictions for voluntary manslaughter § 565.023, RSMo 1986; first degree assault, § 565.050, RSMo 1986; and two counts of armed criminal action, § 571.015, RSMo 1986. The trial court, following the jury's recommen-

dation, sentenced him to prison terms of five years for voluntary manslaughter, ten years for first degree assault, and five years and three years respectively on the two armed criminal action counts. The sentences were to be served concurrently.

■ On appeal, defendant challenges the sufficiency of the evidence supporting his convictions. To determine the sufficiency of the evidence this court will accept as true all the evidence tending to support the jury's verdict, together with all inferences which can be reasonably drawn, and will disregard contrary evidence and inferences. State v. Gaines, 807 S.W.2d 678 (Mo.App. 1991).

Defendant, at the time of the crimes, was a student at Hazelwood East High School in St. Louis. He was involved in a romance with another student, Terry Giardina, which was characterized by periodic break-ups. One such breakup occurred in early September, 1990, when Giardina began dating another student, Tony Myers. On September 5, 1990, defendant announced that he intended to fight Myers. He approached Myers during school that day and told him, "You are mine." Although a crowd gathered at the time and place designated for the fight, neither defendant nor Myers showed up and the fight did not take place.

Later that evening, Andre Carpenter, a former Hazelwood student with whom defendant had previously fought following an earlier breakup with Giardina, called defendant and told him, "You come to school tomorrow and I'm going to cap you." Defendant took this to mean that Carpenter would shoot him. Defendant called his cousin, co-defendant Larry Schell, who agreed to give him a ride to school the next day. Defendant then drove to Schell's house. Schell took defendant's keys and put a pistol in the trunk of defendant's car "because Carpenter had shot at him before." Defendant stated that he never touched the gun and did not know if it was loaded.

The next morning, Schell drove defendant to school in defendant's car and arranged to meet him afterwards. Classes were released earlier than usual because of extreme heat. After school, Carpenter's car passed defendant's car going in the opposite direction. Anthony Moore, Dave Steinbach, and Jeff Adams were with Carpenter in his car. Pat O'Fallen, Schell and defendant were riding in defendant's car. The occupants of each car traded "looks" and gestures. Carpenter made a U-turn and began following defendant's car. Defendant executed a series of turns and Carpenter followed. Defendant then pulled to the side of the road and both cars emptied.

Carpenter and Schell proceeded to the middle of the street and "squared off", positioning themselves for a fistfight. Carpenter asked Schell, "Do you have something with my boy (Myers)?" and Schell replied, "Yes". Schell yelled, "Why you messing with [defendant]?" and, "Do you have a problem with my cousin?" Carpenter responded, "Well, he's causing problems with my friend and it's none of his business."

After a few punches had been thrown, Schell pulled out a carpet cutter with a razor blade at the end. Adams, Moore, Steinbach and Carpenter backed away from Schell. Carpenter said, "Why do you need a knife?" and Schell responded, "All right, if you don't want a knife, then I'll get a gun."

At that point, defendant took the keys from the ignition and opened the trunk of his car. Schell reached into the trunk and removed the gun. He began to "wave" and point the gun at people "with no second thought". Carpenter tried to run away, but tripped on a sewer cover and fell as shots were fired. Schell fired at Moore, who dove to the ground, and then at Adams. Shell casings recovered by the police after the shootings indicated that Schell fired six shots.

Adams and Steinbach moved the bleeding and unconscious Carpenter into the vehicle. Adams then drove the men to the hospital. Defendant drove Schell and O'Fallen away from the scene. Moore, who was shot in the chest and shoulder, was admitted to the hospital. Carpenter died from a gunshot wound to his neck.

Defendant was convicted under a theory of accomplice liability. In reviewing the sufficiency of the evidence under this theory, we are guided by the following principles:

All persons who participate in the commission of an offense are principals and the act of one is the act of all; all persons who act together with a common intent and purpose are equally responsible therefor, and a person who aids and abets the commission of a criminal offense is guilty as a principal. Evidence sufficient to justify the jury in finding that the defendant did in any way aid, abet or encourage another in the commission of an offense is sufficient to support a conviction. Furthermore, while evidence that an accused had an opportunity to commit an offense which merely raises a suspicion is insufficient to sustain a conviction, yet any evidence showing any form of affirmative participation is sufficient. Proof of conduct before, during or after the offense are circumstances from which participation in the offense may be inferred. (Citations omitted).

*Gaines*, 807 S.W.2d at 679 (citing *State v. Cannon*, 744 S.W.2d 820, 824 (Mo.App. 1987)).

■ The evidence need not show that defendant personally committed every element of the crime. *Gaines*, 807 S.W.2d at 679. "Among other things, indicia of aiding and abetting [include] presence at the scene of the crime, flight therefrom and association with others involved before, during and after commission of the crime." *State v. Gonzalez–Gongora*, 673 S.W.2d 811, 813 (Mo.App.1984).

■ In the present case, defendant had a history of conflict with Carpenter. When Carpenter threatened to shoot defendant, he went to Schell for protection. The night before the shootings he drove to Schell's home and watched him place a gun in the trunk of defendant's car. The next day, when Carpenter began chasing defendant's car, he pulled the car over to the side of the road. Defendant exited the car and listened as Schell argued with Carpenter about him. He watched the confrontation escalate as Schell brandished a razor blade, then opened the trunk of his car so that Schell could retrieve the gun previously placed there. After Schell fired six shots, mortally wounding one man and seriously injuring another, defendant drove him away from the scene.

Under these circumstances, we find sufficient evidence to support defendant's convictions as an accomplice.

Judgment affirmed.

AHRENS, P.J., and CRIST, J., concur.