**STATE of Missouri, Respondent,**

v.

**William Joseph HANES, Appellant.**

No. 51417.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 14, 1987.

Motion for Rehearing and/or Transfer Denied May 12, 1987.

Application to Transfer Denied June 16, 1987.

Richard H. Sindel, Clayton, for appellant.

William L. Webster, Atty. Gen., John Munson Morris, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Judge.

Defendant, William Joseph Hanes, was convicted by a jury of capital murder, Section 565.001, RSMo 1980, and sentenced to life imprisonment without possibility of parole or probation for fifty (50) years.

On appeal, Hanes contends that the trial court erred in: (1) failing to instruct the jury on second degree felony murder; (2) allowing prosecutor to improperly bolster the state's chief witness' credibility by eliciting testimony regarding a plea bargain between the witness and the state; (3) allowing the prosecutor to examine Hanes and other witnesses concerning unsubstantiated allegations that Hanes planned to kill his wife and in-laws to alleviate his financial distress; (4) submitting instructions numbered 5, 6, 7, and 8 in that said instructions were not supported by the evidence; (5) submitting instruction No. 7 to the jury in that said instruction was in variance with MAI–CR 2d 15.14 for the reason that said instruction failed to inform the jury that the state had the burden of proving the elements of the crime of murder in the second degree beyond a reasonable doubt; (6) in failing to strike the testimony of a state's witness, when twice during his cross examination, he invoked his privilege against self-incrimination under the Fifth Amendment to the United States Constitution.

We are required by the jury's verdict to set forth the facts and reasonable inferences therefrom in a light favorable to the state. *Wright v. Osborn*, 356 Mo. 382, 201 S.W.2d 935, 937 (1947). John F. Barlow was found dead in his condominium in Clayton, Missouri on October 31, 1981. Robert Daniel Sprouse (a.k.a. Steve Romer) came to St. Louis in August of 1981, in a car he had stolen in Sandusky, Ohio. Upon his arrival he met with Gary Smith, and lived with Smith for a short period of time. It was later in August that Sprouse met the defendant, William Joseph Hanes.

Hanes attempted to aid Sprouse in finding employment at Barnes Hospital, where he was employed, but was unsuccessful. Sprouse finally found a job at the University Club as a waiter. It was there that Sprouse met the victim John Barlow, while waiting on his table. Sprouse told Barlow that he was looking for an apartment closer to the University Club. Mr. Barlow informed Sprouse that he was looking for a young man to stay with him, look after him and occasionally fix a few of his meals. Sprouse was to be compensated by free room and board. This meeting occurred in the latter part of September, 1981. Sprouse decided to move in.

Things worked out at the beginning but later Barlow became jealous of the time Sprouse spent with Mark DeFrenne, Sprouse's homosexual friend. This occurred in early October. Sprouse was very upset with Barlow's interference in his personal life, and discussed this problem with Hanes. Hanes told Sprouse the only way in which to solve the problem was to kill Barlow. Hanes suggested to Sprouse that they should poison Barlow and that Sprouse should take the money that he had coming and that they should split the rest.

It was after this conversation that Sprouse confronted Barlow and threatened to move out. Barlow said he would do anything to keep Sprouse living in the condominium. Sprouse agreed to stay but tested Barlow by taking some of his silver to a coin shop and selling it for five hundred dollars. Barlow stated that he did not mind as long as Sprouse continued to live with him. This occurred on October 23, 1981.

The following day, Hanes called Sprouse and informed him that he was going to drop off some bug killer and powdered poison that should be added to Barlow's

food. Sprouse never gave any of the poison to Barlow. Instead, he destroyed it by dumping it down the building incinerator.

On Sunday, October 25, Hanes called Sprouse to accompany him in a search for some more poison. Hanes purchased another poison, a powder, at an Illinois store. Sprouse was given the poison, but again he destroyed it.

On Monday, October 26, Hanes and Sprouse exchanged several phone calls to check and report on Barlow's condition. Sprouse told Hanes that Barlow was not feeling well. Hanes told Sprouse he would be working late that evening but would drop off another poison that should be administered to Barlow. The poison was dropped off but Sprouse destroyed it.

On Tuesday, October 27, Sprouse went to a play and returned around 11:15 p.m. to check on Barlow's condition. Barlow had been suffering from some type of indigestion. The nurse who was staying with Barlow told Sprouse that Barlow was feeling much better and was sleeping soundly.

On Wednesday, October 28, Sprouse made reservations to leave town. Hanes again called Sprouse to check on Barlow's condition. It was then that Sprouse informed Hanes that he was not giving Barlow any poison. Sprouse also told Hanes that he was leaving that evening. Hanes called Sprouse at 8:30 that evening and Sprouse told Hanes that he could come over and help him pack. Hanes arrived sometime after 9:30. At 10:15 the telephone rang and Barlow answered it. Hanes and Sprouse were in the kitchen. Sprouse left the kitchen to see who was on the phone and when he returned Hanes had a small tin can and a large syringe. Hanes informed Sprouse that he was going to let Mr. Barlow die in a painless way. Sprouse made no effort to stop Hanes.

Hanes then filled up the syringe half way with a liquid that had a strong cleaning fluid odor. Barlow was off the phone now and was relaxing and dozing in a chair. Hanes then walked out of the back door of the condominium. Sprouse put his head out of the window because the cleaning solution was making him dizzy. When Sprouse turned around he saw Hanes come through the front door and jump on Barlow's chest, shoving a knee into his stomach and at the same time putting the syringe into his arm. Sprouse and Hanes later moved the body to make it look like an accident. Hanes then began filling the suitcase with Barlow's expensive personal possessions.

Dr. Mary Case of the medical examiner's office testified that the cause of death was a result of a toxic substance (Energine) which had been injected intravenously. She also found fresh fractures of four ribs anteriorly left side, consistent with trauma. She further stated that Barlow's heart disease might very well have caused him to die sooner, but that Barlow's heart was functioning after the injection.

■ Before we address Hanes' points of error, we are asked first to rule on a motion to dismiss by the state, claiming the appeal is untimely. The motion is denied. Judgment was entered on July 30, 1981 against Hanes. Thereafter, Hanes filed a motion pursuant to Rule 27.26 claiming that his trial counsel was ineffective for failing to file a timely motion for new trial and notice of appeal. The 27.26 motion was granted and the judgment and sentence were vacated. Hanes was resentenced on March 20, 1986. Notice of appeal was filed on March 28, 1986, within the ten (10) day requirement of Rule 78.07. We conclude that notice of appeal was timely filed.

■ However, Hanes failed to file a motion for new trial pursuant to Rule 29.-11(d). Allegations of error to be preserved for appellate review must be included in a motion for new trial. Nothing is preserved for review when defendant fails to file a timely motion for new trial. *State v. Dowdell*, 583 S.W.2d 253 (Mo.App.1979). Thus, by failing to file a motion for new trial, Hanes has failed to preserve any allegation of error for review. Nevertheless, we review for plain error ex gratia. Rule 30.20. *State v. Hitchcock*, 652 S.W.2d 889, 890 (Mo.App.1983).

Under plain error review, we will only reverse for prejudicial errors which so substantially affected the rights of Hanes that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Valentine*, 646 S.W.2d 729, 731 (Mo.1983). We note that the strength of the state's case is a prime factor in determining whether a manifest injustice or miscarriage of justice has occurred. *State v. Gilmore*, 681 S.W.2d 934, 943 (Mo. banc 1984). Here, the evidence of guilt is very strong Hanes admitted injecting energine into Barlow and three witnesses corroborated his confession.

By his first point, Hanes contends that the trial court erred in failing to instruct the jury on second degree felony murder and maintains that the evidence introduced at trial required that the court submit such an instruction. The crucial issue is whether the evidence justified the submission of both conventional murder in the second degree, and felony murder in the second degree. The trial court submitted a conventional second degree murder instruction, Instruction No. 7. The murder occurred in October of 1981 and the instructions given are the 15.00 series of MAI–CR 2d, covering homicides committed ater May 25, 1977. The verdict directing instructions given were:

Instruction No. 5, MAI–CR 2d 15.02, modified by MAI–CR 2d 2.12, Capital Murder. Instruction No. 6, MAI–CR 2d 15.12, modified by MAI–CR 2d 2.12, Murder in the First Degree in Robbery. Instruction No. 7, MAI–CR 2d 15.14, modified by MAI–CR 2d 2.12, Murder: Second Degree, Conventional. Since Instruction No. 7 is the subject of Hanes' points 5 and is set forth:

If you do not find the defendant guilty of capital murder or murder in the first degree, you must consider whether he is guilty of murder in the second degree.

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with him with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

If you find and believe from the evidence beyond a doubt:

First, that on or about October 28, 1981, in the County of St. Louis, State of Missouri, the defendant or Robert Sprouse caused the death of John F. Barlow by assaulting him and/or injecting him with a lethal drug, and

Second, that the defendant intended to take the life of or cause serious bodily harm to John F. Barlow, and

Third, that the defendant and Robert Sprouse did not do so in anger, fear or agitation suddenly provoked by the unexpected acts or conduct of John F. Barlow, then you are instructed that the offense of murder in the second degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the commission of murder in the second degree, the defendant acted together with or aided Robert Sprouse in committing the offense of murder in the second degree,

then you will find the defendant guilty of murder in the second degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the propositions submitted in this instruction, you must find the defendant not guilty of that offense.

Instruction No. 8, MAI–CR 2d 15.18, modified by MAI–CR 2d, 2.12, Manslaughter: Conventional.

Hanes argues that the felony supporting the submission of felony murder second degree is either assault in the first or second degree as charged in the information. Hanes contends Barlow died from either an assault or an injection, and further assumes that the assault, combined with Barlow's very severe atherosclerotic coronary artery disease, could have caused his death. Hanes claims that Instruction No. 7 was not consistent or justified by the evidence and that these inconsistencies would confuse the jury and cause them to ignore

evidence that the defendant had the mens rea to only commit an assault without the intent to accomplish murder. In closing Hanes claims that the court failed to instruct the jury on a lesser included offense as required and the conviction must therefore be reversed.

MAI–CR 15.00 Notes on Use states: "(1) an instruction on conventional manslaughter must be given when any higher homicide offense is submitted, and (2) an instruction on a conventional second degree murder must be given in all cases in which the court instructs on capital murder. *No felony murder either in the first or second degree is automatically submissible. Neither may be submitted unless justified by the evidence.*"

■ Here, the evidence does not support a second degree felony murder charge. The evidence at trial revealed that Barlow's death was caused by the assault by Hanes and/or the ensuing injection. Hanes claims that the assault is the felony that forms the basis of the second degree felony murder because it is felony other than the five listed in the first degree felony murder statute. Hanes, however, mistakes murder for manslaughter. *See* W. LaFave & A. Scott, Handbook on Criminal Law § 79, at 600–01 (1972). It is well settled in Missouri that if one commits an unlawful assault upon another without malice and death results, *the assailant is guilty of manslaughter,* even though death was not intended and the assault was not of a character likely to prove fatal. § 565.005, RSMo (1978); *State v. Frazier,* 339 Mo. 966, 98 S.W.2d 707, 713 (1936); *State v. Recke,* 311 Mo. 581, 278 S.W. 995, 999 (1925). Hanes received an instruction on manslaughter. Moreover, we are of the opinion that no assault felony independent of the homicide here existed. If the assault resulted in death, the assault itself was includable in the charge of homicide. The felony-murder doctrine does not apply where the felony is an offense included in the charge of homicide. The acts of assault merge into the resultant homicide, and may not be deemed a separate and independent offense which could support an instruction for felony murder. *See* W. LaFave & A. Scott, Handbook on Criminal Law, § 71, at 559 n. 73 (1972).

■ Hanes argues that the assault, combined with Barlow's heart disease, could have caused the victim's death. Apparently Hanes maintains that causation was not proved. However, a person proximately causes the death of another, and hence is criminally culpable, where "the deceased was in feeble health and died from combined effects of the injury and of his disease, or if the injury accelerated the death from the disease ... although the injury alone would have not been fatal ... [and] although the disease itself would probably have been fatal, if the injury accelerated death." *Frazier,* 98 S.W.2d at 713 (quoting 29 C.J. § 57, at 1082). It is irrelevant that the defendant was unaware that the deceased was in feeble health. In such circumstances, it is enough that the evidence shows that the unlawful act to be a contributing proximate cause, although other contributing causes may have intervened. *Id.* Here, the medical evidence was that the heart disease combined with the assault and/or injection produced death sooner than would have been otherwise. However, the evidence unequivocally shows that the assault and/or injection were inextricably related to Barlow's death and that the proximate cause of death was the injection of energine. We conclude that this evidence provided a sufficient basis for the jury determination that the death was caused by the criminal agency of Hanes. Thus, the trial court did not err in failing to instruct on second degree felony murder.

■ Hanes' second point contends that the prosecutor made statements which imply the knowledge of outside evidence not put before the jury that the testimony of Robert Sprouse was truthful, and that this undermined Hanes' right to a fair determination of that witness' credibility by the jury. Hanes contends that the prejudicial impact of these statements far outweighs its probative value and amounts to plain error. Hanes maintains that the impression left on the jury by the prosecutor's statements is that Sprouse was a credible

witness and therefore the jury felt their efforts need not go any further in determining Sprouse's credibility.

The following exchange is complained of:

Q (Prosecutor) ... were you offered a deal?

A (Sprouse) Yes.

Q By me and the Prosecutor's office, Mr. Westfall particularly?

A Yes.

Q And when did that happen?

A That happened sometime, I believe, in February.

Q After you already were charged with Capital Murder?

A Yes.

.    .    .    .    .

Q What was the arrangement or deal?

A The deal was that if I would testify to what I saw, and the truth against Mr. Hanes, that I would be given my—my charge would be dropped down from Capital Murder to Murder One. And I would be given full imprisonment.

Q Did you agree to do that?

A I did.

.    .    .    .    .

Q Did you actually sign some sort of statement in front of a judge here in St. Louis County agreeing to this deal that you testified about?

A I did.

Q Let me show you what's been marked as State's Exhibit 49, Mr. Sprouse. Do you recognize that?

A I do.

Q Is that the agreement that you signed?

A Yes, it is.

MR. GOLDMAN: Judge, I move that 49 be admitted into evidence.

MR. GOMRIC: No objection to 49, your Honor.

THE COURT: It will be received in evidence.

Q Do you want to read that to the jury?

A "The state and the defendant hereby agree that defendant is to testify at any and all proceedings and trials of William Hanes involving the murder of John Bar-low, including any necessary retrials, and to testify truthfully. In exchange for this testimony, the state will reduce the charge pending against the defendant to Murder in the First Degree. Defendant is to plead guilty to that charge, and to be sentenced to life imprisonment. Any statement which defendant makes pursuant to this agreement will be covered by testimonial immunity for defendant. However, if defendant does not fulfill this agreement, his statements in any interview or in court will be used against him."

Q Were you told as part of that what would happen if we found you weren't telling the truth?

A That I would be sitting on death row.

Q So the agreement won't be valid then?

A Right.

Hanes argues that the foregoing constitutes an impermissible guarantee by the prosecution as to the truthfulness and credibility of Sprouse. Hanes maintains that the exchange left, in the jury's mind, a notion that there was outside evidence that the prosecutor possessed but did not put on as to the truthfulness of Sprouse. It is true that "[t]he prosecutor may not imply to the jury that he has knowledge which, if the jury but knew those facts, would cause them to return a verdict of guilty." *State v. Bramlett*, 647 S.W.2d 820, 822 (Mo.App. 1983). That is not the case here.

■ The prosecutor was entitled to anticipate the defendant's impeachment of Sprouse based on the plea bargaining. *State v. Neal*, 526 S.W.2d 898, 901 (Mo. App.1975). In so doing he merely asked what the bargain was and what its conditions were. Hanes did not object to the questions and answers. The prosecutor's questions did not carry an inference of outside knowledge of facts relating to the truth of Sprouse's testimony. The questions merely related to how the bargain was entered into and its limitations. We conclude that there was no manifest injustice.

█ In Hanes' third point, he contends that the prosecuting attorney elicited from state witnesses, an unsubstantiated and irrelevant plan by Hanes to murder his wife and in-laws, which unduly biased the jury. Hanes claims that the trial court erred in failing "to sustain defendant's objections" to this testimony.

The challenged testimony and rulings cover numerous pages in the transcript. However, we need only summarize to dispose of the point. Robert Sprouse, on redirect by the state, testified that he was fearful of Hanes because Hanes had told him that he wanted to kill his wife and in-laws. An objection to this answer was sustained as nonresponsive. Sprouse testified that Hanes had threatened him and had threatened his wife and in-laws. The objection to this testimony was overruled. Sprouse was then asked what Hanes threatened to do to his wife and the objection thereto was sustained. Ms. Drnec, a co-worker of Hanes at Barnes Hospital, testified as to Hanes' financial difficulties. Drnec testified that Hanes had told her that he owed a lot of money on credit cards and that he had talked to her about a possible solution. The prosecutor, in cross-examining Hanes, asked if Hanes had told Sprouse that his wife was the source of his financial trouble. Defense counsel's general objection was overruled and Hanes testified that he thought so. Hanes was asked if he told Sprouse there were people he wanted eliminated. After Hanes testified no, defense counsel's objection was sustained and the jury was instructed to disregard. The prosecutor asked Hanes if he had told Sprouse and co-workers about his wife's insurance. Defense counsel's objection was sustained.

At the outset we note that all but one objection by Hanes was sustained and that in each of those instances the trial court granted all relief requested. As to the line of questioning in general, though, we find that it was relevant as to Hanes' motive in killing Barlow. *State v. Williams*, 652 S.W.2d 102 (Mo. banc 1983). It is apparent that the state was attempting to show that Hanes was in dire financial straits and that he viewed murder as a way out. The evidence at trial showed that the vast portion of Barlow's valuables were recovered from the home of Hanes' parents and that Hanes talked to Sprouse about killing Barlow for money. The challenged question and answers were a permissible attempt to show that Hanes killed Barlow for money. We find no manifest injustice.

Hanes' fourth point contends that the instructions numbered 5, 6, 7, and 8 were in error because they were submitted in the disjunctive and that the evidence did not show that Barlow died as a result of an assault or a lethal injection.

█ Hanes is alleging that the evidence did not support the submission in the verdict directing instructions in the disjunctive. The evidence shows that death could have been directly caused by assault and/or the injection. The evidence clearly supports the charge in the disjunctive. Hanes relies on *State v. Shepard*, 442 S.W.2d 58 (Mo.1969), but that factual pattern is not present in the instant case. In *Shepard*, the defendant was found guilty by a jury of an attempted burglary of a service station. The defendant was on a roof of the building where a hole was found which was not there when the station owner closed the station. The jury was given the following instruction:

> The court instructs the jury that if you believe and find from the evidence * * * that * * * the defendant * * * did * * * unlawfully, feloniously and burglariously attempt to break into and enter (the building described in the amended information) * * * by then and there forcibly tearing a hole in the roof of said store-room, there situate, with intent then and there *to commit some felony, or any stealing therein*, but that the defendant failed in the perpetration therein * * * then you will find the defendant guilty of Attempted Burglary, Second Degree, and so find in your verdict. (Emphasis added).

It is clear in *Shepard* that there was no evidence in the case that the defendant was going to commit a crime other than burglary. In the present case, testimony reveals

**620**

that: (1) Hanes assaulted, and (2) injected Barlow with Energine. Evidence further revealed that Barlow's heart was still beating after the injection. Dr. Case, the medical examiner, testified that the Energine passed through the on-going circulation and it reached the heart, indicating that the heart was beating after the injection. It is quite clear that the jury could find evidence that Barlow died from either an assault and/or an injection, and as the testimony clearly shows Hanes both assaulted and injected Barlow. We find no manifest injustice.

In Hanes' fifth and seventh points, he claims that instruction No. 7 was not in compliance with MAI–CR 2d 15.14 because the word "reasonable" was left out of the third paragraph of said instruction and therefore, the jury was not informed of the state's burden of proving beyond a reasonable doubt the elements of murder in the second degree. The relevant part of instruction No. 7 reads as follows: "If you find and believe from the evidence beyond a doubt."

Viewing the jury instructions as a whole, we find that leaving out the word "reasonable" in one paragraph constitutes a harmless error, and that no manifest injustice resulted from this omission. The term "beyond a reasonable doubt" is used twice in the instruction No. 7 and repeatedly in the other verdict directing instructions (No. 5, 6 and 8), and in addition, the trial judge while reading the instructions to the jury included the word "reasonable" in the third paragraph.

The relevant part of the trial judge's recital of instruction No. 7, paragraph three reads as follows: "If you find and believe from the evidence beyond a *reasonable* doubt:" We are required to consider the instruction as a whole when error has occurred to determine whether prejudice has resulted. *State v. Holt,* 592 S.W.2d 759, 776 (Mo.1980). In *State v. Danforth,* 654 S.W.2d 912, 923 (Mo.App.1983), the trial court omitted the phrase "beyond a reasonable doubt" in paragraph three of the instruction. On appeal, the court stated that when reviewing instructions they must

be considered as a whole when error has occurred and concluded that the trial court's inadvertent failure to include "beyond a reasonable doubt" did not prejudice the defendant. In the present case we conclude that the inadvertent failure of the trial court to include the word reasonable did not prejudice Hanes and did inform the jury of the state's burden.

Hanes' sixth point of error is that the trial court erred in failing to strike the entire testimony of Robert Sprouse because twice during his cross examination he invoked his privilege against self-incrimination under the fifth amendment in violation of Article I, Section 18(a) of the Missouri Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.

In *State v. Blair,* 638 S.W.2d 739 (Mo. banc 1982) *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983), our Supreme Court adopted the rule stated in *United States v. Cardillo,* 316 F.2d 606 (2d Cir.), *cert. denied,* 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963). That rule is:

Since the right to cross-examine is guaranteed by the Constitution, a federal conviction will be reversed if the cross-examination of governmental witnesses has been unreasonably limited. E.g., *Alford v. United States* [282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931)], supra; *United States v. Masino,* 2 Cir.1960, 275 F.2d 129; *United States v. Lester,* 2 Cir. 1957, 248 F.2d 329. However, reversal need not result from every limitation of permissible cross-examination and a witness' testimony may, in some case, be used against a defendant, even though the witness invokes his privilege against self-incrimination during cross-examination. In determining whether the testimony of a witness who invokes the privilege against self-incrimination during cross-examination may be used against the defendant, *a distinction must be drawn between cases in which the assertion of the privilege merely precludes inquiry into collateral matters* which bear only on the *credibility of the witness* and those cases in which the asser-

tion of the privilege prevents inquiry into matters about which the witness testified on direct examination. Where the privilege has been *invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be used against him.*

*Id.* at 611.

The questions pertaining to Sprouse's involvement with organized crime were purely collateral because they related solely to his credibility as a witness and had no relation to the subject matter of the direct examination. We conclude that Hanes' constitutional rights were not violated. The trial court did not err in admitting the testimony of Robert Sprouse.

Judgment affirmed.

GARY M. GAERTNER, P.J., and STEPHAN, J., concur.