**STATE of Missouri, Plaintiff–Respondent,**

v.

**Brian A. COODY, Defendant–Appellant.**

No. 18056.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 1, 1993.

Motion for Rehearing or Transfer
Denied Dec. 22, 1993.

Application to Transfer Denied
Jan. 25, 1994.

Marcie W. Bower, Office of the State Public Defender, Columbia, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., for plaintiff-respondent.

SHRUM, Judge.

The defendant Brian A. Coody was convicted by a jury of one count of abuse of a child, § 568.060, RSMo Supp.1990, and one count of second degree murder, § 565.021.-1(2), RSMo 1986 (felony-murder). The underlying felony to support the murder conviction was the child abuse offense.

The trial court found the defendant to be a prior and persistent offender and sentenced him to consecutive terms of life imprisonment on the murder conviction and 20 years on the child abuse conviction.

The defendant's appeal presents three questions.

1. Was the defendant's constitutional right to be free from double jeopardy violated when he was sentenced for both child abuse and felony-murder predicated upon child abuse?

2. Did the trial court commit prejudicial error when it failed *sua sponte* to declare a mistrial because of closing argument comments by the prosecutor?

3. Was prejudicial error committed when the trial court gave the reasonable doubt instruction patterned after MAI–CR3d 302.-04?

We answer questions one and three in the negative. We decline to consider question number two. We affirm.

## FACTS

Adam Hagerman, age 2, the son of Lisa Hagerman, died on June 3, 1991, in Nevada, Missouri, as a result of what two physicians characterized as non-accidental "blunt head trauma."

Lisa Hagerman and her children, including Adam, began living with the defendant in September or October 1990. From a statement given by the defendant to law enforcement officials after Adam's death—a statement that was introduced into evidence—the defendant gave this account of his abuse of Adam on June 3, 1991.

The defendant became irritated because Adam was "picking his face." When Adam continued this activity, despite being told to stop, the defendant slapped the child causing his head to hit a wall. He also "pushed" Adam down, causing the boy to strike the side of his head on a recliner. Later, as Adam was going through a door, the defendant pushed him, and Adam hit the right side of his head on a television.

Finally, when Adam did not want to go to bed, the defendant "pushed" him down, and the back of Adam's head "hit the floor." The defendant then put Adam into his play pen. Soon thereafter the defendant saw Adam having a "seizure." At that point the defendant left the house for about five minutes. When he returned, Adam had died. The defendant tried CPR but could not revive him. He went next door and called an ambulance. Adam was taken by emergency personnel to a local hospital, but he was dead on arrival.

Opinions of the cause of Adam's death came from forensic pathologist John Overman, M.D., who performed an autopsy on Adam's body, and from Dr. Robert R. Jones, the pediatrician for Adam throughout his life.

Dr. Overman testified that the cause of Adam's death was homicidal—as opposed to accidental—because of the magnitude, severity, and number of injuries he saw on the child's body. Specifically, the injuries to Adam documented by Dr. Overman included external injuries to his head and other parts of his body, "very severe" brain swelling, bilateral subdural hematomas, acute epidural

hematoma, and retinal hemorrhages in both eyes. He determined the ultimate cause of Adam's death was increased pressure in his head due to blunt head trauma.

Dr. Jones reached a similar conclusion based on the injuries on Adam's head and body, blood in the spinal fluid taken from Adam's body, and his observations of Adam's head injuries as Dr. Overman performed the autopsy.

This fatal trauma to Adam culminated a history of physical abuse of Adam by the defendant. As admitted by the defendant, the abuse commenced in September 1990 when he moved in with Lisa Hagerman and continued periodically until Adam's death. However, the abuse of a child count submitted to the jury, for which the defendant was convicted, was for the incidents that occurred June 3, 1991.

## APPLICABLE STATUTES

The felony-murder rule in Missouri is now part of the second degree murder statute. In pertinent part it provides:

> 1. A person commits the crime of murder in the second degree if he:
>
> . . . .
>
> (2) Commits ... *any felony*, and, in the perpetration ... of such felony ... another person is killed as a result of the perpetration ... of such felony....
>
> 2. Murder in the second degree is a class A felony, and the punishment for second degree murder shall be in addition to the punishment for commission of *a related felony* or attempted felony, other than murder or manslaughter.

§ 565.021, RSMo 1986 (emphasis ours).

It was under § 565.021.1(2) that the defendant was charged, convicted, and sentenced for the killing of Adam. The related felony,

or underlying crime, of which the defendant was convicted and sentenced was "abuse of a child," § 568.060, RSMo Supp.1990, which provides in part:

> 1. A person commits the crime of abuse of a child if he:
>
> (1) Knowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old....

## DISCUSSION AND DECISION

*Double Jeopardy*

■ The defendant first charges that the trial court erred by entering judgment and sentence against him for both abuse of a child and second degree felony-murder because the court violated his rights to be free from double jeopardy as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 19, of the Missouri Constitution. Relying on language from *State v. Shock*, 68 Mo. 553 (Mo.1878), and *State v. Hanes*, 729 S.W.2d 612, 617[4–5] (Mo.App.1987), the defendant argues that, given the facts in this case, the crime of abuse of a child cannot be deemed a "related" felony subject to cumulative punishment under the felony-murder law because the alleged acts of personal violence, or child abuse, "merged" into the homicide itself.[1]

The defendant fails to develop anything in the argument portion of his brief to support his claim of double jeopardy based upon Article I, Section 19 of the Missouri Constitution. Such failure no doubt stems from the fact that the Missouri Constitution offers no basis for his claim. *State v. McTush*, 827 S.W.2d 184, 186 (Mo.banc 1992). Article I, Section 19 provides that "no person shall be ... put again in jeopardy of life or liberty for the same offense, after being once acquitted by a

---

1. *Shock* and *Hanes* do not involve double jeopardy issues. Rather, they apply a merger doctrine as a means of limiting or barring application of the felony-murder rule when felonious assault is the underlying felony. As part of the defendant's argument he asserts that under the facts of this case the crime of child abuse is analogous to assault; hence merger principles prohibit use of the felony-murder rule when abuse of a child is the underlying felony. A difficulty with this argument is that the defendant's point relied on fails to raise the issue. His point is confined to asserting violations of his constitutional protection against double jeopardy. We limit our review to matters raised in the points relied on. *State v. Gooch*, 831 S.W.2d 277 (Mo.App.1992); *State v. Hill*, 812 S.W.2d 204, 208[5] (Mo.App. 1991). *Shock* and *Hanes* do not support the defendant's point relied on.

jury...." Because the defendant was never acquitted by a jury, the double jeopardy clause of the Missouri Constitution has no application. *McTush*, 827 S.W.2d at 186.

■ The double jeopardy argument that defendant does develop in the argument portion of his brief is based upon the Fifth Amendment to the United States Constitution which provides that no person shall "be subject for the same offence to be twice put in jeopardy of life and limb." Such protection is made applicable to the State through the Fourteenth Amendment. *Hagan v. State*, 836 S.W.2d 459, 461–62 (Mo.banc 1992) (citing *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969)).

■ A component of the Fifth Amendment double jeopardy guarantee is protection against cumulative punishments. *McTush*, 827 ·S.W.2d at 186. The purpose of that protection is to guarantee that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas*, 491 U.S. 376, 381, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322, 331 (1989). *See Hagan*, 836 S.W.2d at 462[8]; *McTush*, 827 S.W.2d at 186.

■ Double jeopardy analysis regarding multiple punishments is now clearly limited to determining whether cumulative punishments were intended by the legislature. *McTush*, 827 S.W.2d at 186[2] (citing *Missouri v. Hunter*, 459 U.S. 359, 366–69, 103 S.Ct. 673, 678–80, 74 L.Ed.2d 535, 542–44 (1983)). Thus, if the legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those statutes proscribe the "same conduct," the prosecution may seek and the court may impose cumulative punishment under those statutes in a single proceeding without offense to the double jeopardy clause. *State v. Owens*, 849 S.W.2d 581, 584[3] (Mo.App.1993) (citing *Hunter*, 459 U.S. at 368, 103 S.Ct. at 679, 74 L.Ed.2d at 544, and *McTush*, 827 S.W.2d at 186[2, 3] ). *See also State v. Villa–Perez*, 835 S.W.2d 897, 903[13] (Mo.banc 1992).

That the double jeopardy analysis adopted and approved in *McTush* is paramount and is to be applied to the exclusion of other doctrines and principles is made clear in *McTush*. There, the accused relied on the "single act of force rule" to argue that he was subjected to double jeopardy by reason of multiple punishments when he was sentenced on assault and attempted robbery charges because the act of shooting the victim in the face was the act forming the basis for convictions of both offenses. McTush drew his "single act of force" argument from cases holding that the double jeopardy clause prevents a single act of force proven as an essential element of the crime of robbery from being used to constitute the crime of assault. 827 S.W.2d at 187. Our Supreme Court rejected the "single act of force" rule in double jeopardy analysis, stating:

> Even if the single act of force doctrine relied on by appellant is read to prohibit convictions for both robbery and assault, the doctrine retains vitality in double jeopardy analysis involving multiple punishments solely to the extent that the doctrine is consistent with legislative intent. *Missouri v. Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679–680. *Hunter* makes clear that the double jeopardy clause is not a bar to prosecuting a single act of force under different statutes if the legislature intended to punish such conduct cumulatively under both statutes.

*McTush*, 827 S.W.2d at 187[4]. *McTush* thus abrogated the "single act of force" doctrine to the extent of its inconsistency with legislative intent regarding cumulative punishment. *See Hagan*, 836 S.W.2d at 462.

■ Although cast in terms of "merger" principles, the double jeopardy argument advanced by the defendant here is not substantively different from the "single act of force" argument rejected in *McTush*. Because *McTush* teaches that double jeopardy analysis regarding multiple punishment is now limited to determining whether cumulative punishment was intended by the legislature, we conclude that merger principles no longer have a place in double jeopardy analysis. *See McTush*, 827 S.W.2d at 186. The defendant's argument to the contrary is rejected.

We therefore proceed to a determination of the legislature's intent regarding cumulative punishment as it relates to this case.

■ To determine legislative intent regarding cumulative sentencing, we are to look first at the statutes under which the defendant was convicted. *Villa–Perez*, 835 S.W.2d at 903; *McTush*, 827 S.W.2d at 187. When our legislature rewrote Missouri's felony-murder rule in 1984, it was "with the explicit expression of intention that punishment for the felony murder 'shall be in addition to the punishment for commission of a related felony or attempted felony, other than murder or manslaughter.' § 565.021.2, RSMo 1986." *Owens*, 849 S.W.2d at 584. Inasmuch as our felony-murder statute "expressly intends multiple punishments for both second degree felony murder and the underlying felony, such punishments when imposed in a single trial do not constitute double jeopardy." *Id.* at 584[4]. Point I is denied.

### Closing Argument

■ In Point II relied on the defendant contends that it was plain error for the trial court to fail to declare a mistrial *sua sponte* during the prosecutor's closing argument. Because this is a contention of error that was not subject to contemporaneous objection and was not raised or preserved in the motion for new trial, it can be examined only under the plain error standard of Rule 30.20. *State v. Roberts*, 709 S.W.2d 857, 864[6] (Mo. banc), *cert. denied*, 479 U.S. 946, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986); *State v. Jordan*, 834 S.W.2d 900, 901[1] (Mo.App. 1992).

The defendant seeks plain error review by this court, arguing that the prejudice to him from the prosecutor's closing argument rises to the level of manifest injustice and miscarriage of justice. Specifically, he complains of a comment by the prosecutor that "what happened was the defendant was tossing Adam around, committing all kinds of felonies, and a death resulted." He asserts that this argument improperly implied that defendant had committed crimes other than those charged, thereby causing an improper and prejudicial presumption of guilt in the minds of the jurors. *See State v. Brown*, 670 S.W.2d 140, 141[4] (Mo.App.1984) (citing *State v. Carter*, 475 S.W.2d 85, 88 (Mo.1972)).

Appellate courts of this state " 'rarely grant relief on assertions of plain error as to closing argument ... because, in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention.' " *State v. Bogard*, 836 S.W.2d 87, 89 (Mo.App.1992) (quoting *State v. Clemmons*, 753 S.W.2d 901, 907–08 (Mo.banc), *cert. denied*, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988)).

Trial strategy looms as an important consideration in any trial; accordingly, assertions of plain error concerning matters contained in closing argument are generally denied without explication. *State v. Wood*, 719 S.W.2d 756, 759[5] (Mo.banc 1986). In *State v. McMillin*, 783 S.W.2d 82 (Mo.banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990), our Supreme Court refused to review the defendant's claims with respect to closing argument under the plain error standard saying, "The plain error rule should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review." 783 S.W.2d at 97–98[31]. We likewise have refused plain error review of unpreserved claims of trial court error concerning closing argument. *See, e.g., Bogard*, 836 S.W.2d at 89; *Jordan*, 834 S.W.2d at 901.

Adhering to the foregoing, we expressly refuse to review the defendant's claims with respect to closing argument. The defendant waived his claim of error by failure to preserve error. *See McMillin*, 783 S.W.2d at 98[31]; *Bogard*, 836 S.W.2d at 89; *Jordan*, 834 S.W.2d at 901. Perhaps trial counsel "considered the remarks inconsequential not warranting objection[,] or as trial strategy [counsel] set the stage for built in error." *See Wood*, 719 S.W.2d at 760. Whatever the reason for counsel's failure to object, we decline to exercise our discretion to review for plain error.

*"Reasonable Doubt" Instruction*

■ In his final point on appeal, Defendant claims the trial court erred when it submitted Instruction No. 4, patterned after MAI–CR3d 302.04, which defines "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt." He contends the·definition allowed the jury to convict him "based on a degree of proof that was below that required by the due process clause."

The Missouri Supreme Court has held that the "firmly convinced" language does not lower the proof required of the state in criminal cases to something less than "proof beyond a reasonable doubt." *State v. Antwine,* 743 S.W.2d 51, 62–63[12] (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). In *State v. Griffin,* 848 S.W.2d 464, 469[8] (Mo. banc 1993), the court reaffirmed its holding in *Antwine* after consideration of *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), relied on here by Defendant.[2] Point denied.

Judgment affirmed.

PARRISH, C.J., and MONTGOMERY, J., concur.

---

**2.** Defendant calls our attention to *State v. Manning,* 305 S.C. 413, 409 S.E.2d 372 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992), a case in which a jury was instructed, contrary to the teaching of *Cage,* that a *"[m]oral certainty and beyond a reasonable doubt are the same thing in the eyes of the law."* 409 S.E.2d at 374 (italics in original). In reversing Manning's conviction, the South Carolina Supreme Court, with "an abundance of caution," suggested to the trial court that it give the definition approved in *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1950), namely, "A reasonable doubt is the kind of doubt that would cause a reasonable person to hesitate to act." 409 S.E.2d at 375. Our Supreme Court has given no such direction. Rather, it has repeatedly approved the reasonable doubt instruction patterned after MAI–CR3d 302.04. *Manning* has no application in Missouri.