STATE of Missouri, Respondent,

v.

Carlos Luna MENDOZA, Appellant.

No. WD 61637.

Missouri Court of Appeals,
Western District.

Oct. 7, 2003.

Irene Karns, Assistant State Public Defender, Columbia, for appellant.

874

Jeremiah W. (Jay) Nixon, Attorney General, Karen Kramer, Assistant Attorney General, Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and EDWIN H. SMITH and HOWARD, JJ.

VICTOR C. HOWARD, Judge.

Appellant, Carlos Luna Mendoza, appeals from his conviction after a jury trial in the Circuit Court of Johnson County, Missouri, of felony child abuse, § 568.060,[1] and second-degree (felony) murder, § 565.021.1(2). The child abuse offense served as the underlying felony to support the felony murder conviction. The trial court sentenced him in accordance with the verdict to consecutive terms of life and thirty years.

Appellant argues for the first time on appeal that his double jeopardy rights were violated, "because he was twice-punished for the same offense in that child abuse is a lesser included offense of second-degree (felony) murder as charged in this case." As explained below, the Southern District of this Court decided squarely against this claim in *State v. Coody,* 867 S.W.2d 661 (Mo.App. S.D.1993),[2] and we agree with that decision. Because it is clear from the face of the record that the trial court had the power to enter the challenged convictions, the plain error review requested by Appellant is not warranted. Accordingly, we affirm the trial court's judgment.

**Background**

Appellant does not challenge the sufficiency of the evidence. Viewed in a light most favorable to the verdict, the following evidence was adduced at trial:

Around 3:00 p.m. on June 23, 2001, Knob Noster Chief of Police Brian Kniskern responded to a 911 call from a Spanish-speaking individual concerning a non-responsive child at a mobile home park. When Chief Kniskern arrived, he encountered Appellant standing between two trailers. Appellant was holding 23-month-old Raven Ridgeway—his wife's son for whom he cared for while she was working—in his left hand, against his body, by the back of his neck as he spoke on a cell phone with his right hand. Chief Kniskern noticed that the child "was limping his arms" and was turning blue, so he began administering C.P.R. until EMT's arrived and took over attempts to revive the child.

When asked what had happened, Appellant explained that Raven had asthma and had been having trouble breathing all week. Just prior to the 911 call, Appellant heard a "thump" from the living room, so he rushed in and discovered that Raven had fallen off the couch, where he had been eating chips and drinking Pepsi. Appellant noticed Raven was not breathing, so he fanned his face and gently shook him in an attempt to get a response. Appellant then went to the trailer next door to use the phone to call 911. Chief Kniskern noted at the time that Appellant was unusually calm.

An ambulance took Raven to the hospital in Warrensburg, Missouri. Chief Kniskern took Appellant there. Raven's mother (Appellant's wife) arrived about forty-five minutes later after a friend located her. Appellant told a hospital staff member who translates for Spanish-speaking persons about Raven's fall from the couch. He also recalled that earlier in the week

1. Unless otherwise noted, statutory references are to RSMo 2000.

2. The Southern District denied Coody's Motion for Rehearing or Transfer on December 22, 1993. Our supreme court denied his Application to Transfer on January 25, 1994.

Raven had fallen off a toy car on the deck and bumped his head.

Raven, who had suffered a cardiac respiratory arrest and had to be resuscitated at the hospital in Warrensburg, was life-flighted to Children's Mercy Hospital in Kansas City, Missouri. Medical tests, including a C.T. scan and an opthamology examination, led to a diagnosis of "shaken impact syndrome," which the examining doctors concluded was the result of recently inflicted injuries. The pediatric intensive care physician at Children's Mercy confirmed that there was essentially nothing other than shaken impact syndrome that could cause the symptoms Raven was exhibiting. She further confirmed that the types of incidents Appellant had described, including Raven's fall from a bike, his fall from the porch, or his fall from a bed or couch, could not have caused Raven's symptoms.

Later that evening at the hospital, around 8:00 p.m., a social worker interviewed Appellant with the assistance of a translator. Chief Kniskern was also present. After Appellant's interview, Chief Kniskern and the social worker interviewed Raven's mother. Based on the information from the interviews and the treating doctors' statements concerning Raven's symptoms and injuries, Chief Kniskern arrested Appellant around 3:00 a.m. the next morning. The following day, June 25, 2001, Raven was pronounced dead. The medical examiner who performed Raven's autopsy concluded Raven's symptoms and injuries indicated that he was shaken violently and struck on the back of the head, resulting in his death.

The State subsequently charged Appellant with class A felony child abuse, section 568.060, and second-degree murder, section 565.021.1(2). At his trial, the jury heard evidence of the above. Raven's mother's friends and Raven's aunt also testified concerning Appellant's previous abusive behavior toward Raven and the marital problems between Appellant and Raven's mother. Appellant testified in his own defense, through the assistance of translators, that he never abused Raven, and Raven could not have died as a result of his actions. At the close of all the evidence, the jury convicted Appellant as charged. The trial court sentenced him in accordance with the verdict to consecutive terms of life for felony child abuse and thirty years for second-degree murder. This appeal follows.

## Double Jeopardy

■ Appellant argues that his double jeopardy rights were violated "because he was twice-punished for the same offense in that child abuse is a lesser included offense of second-degree (felony) murder as charged in this case."

Appellant concedes his argument on appeal differs from that made at the trial level,[3] and, therefore, the issue was not properly preserved for review. Rule 29.11. However, he requests plain error review under Rule 30.20, "because '[t]he right to be free from double jeopardy ... is a constitutional right that goes to the very power of the State to bring the defendant in the court to answer the charge brought against him.'" (Citation omitted.)

■ This court will decline to review an unpreserved double-jeopardy claim for plain error unless it is clear from the face of the record that the trial court had no power to enter the challenged convictions. *State v. Dunn*, 7 S.W.3d 427, 430 (Mo.App.

---

**3.** Trial counsel argued that child abuse resulting in death merged into felony murder. *See* this court's opinion in *State v. Bouser,* 17 S.W.3d 130 (Mo.App. W.D.1999), rejecting that same argument.

W.D.1999) (citing *State v. Elliott*, 987 S.W.2d 418, 421 (Mo.App. W.D.1999)). We must, therefore, determine whether the record clearly establishes that the trial court lacked jurisdiction to enter the convictions against Appellant and sentence him for both felony child abuse, which resulted in death, and second-degree (felony) murder.

As also conceded by Appellant, the Southern District of this Court decided squarely against this claim in *Coody*, 867 S.W.2d at 664–66. However, Appellant points out that this court is not bound by *Coody* and urges us to hold differently. He acknowledges that section 565.021.1(2), the felony murder statute, specifically authorizes cumulative punishment with any related felony other than murder or manslaughter. But, he "contends that the legislature simply overlooked the child abuse statute," which he argues is analogous to involuntary manslaughter in that the prosecutor is not required to prove that the defendant's actions were intended to cause death.

In *Coody*, the Southern District noted our supreme court's abrogation of "the 'single act of force' doctrine to the extent of its inconsistency with legislative intent regarding cumulative punishment." *Id.* at 665 (citing *State v. McTush*, 827 S.W.2d 184, 187 (Mo. banc 1992)). It then determined the legislature's intent in enacting section 565.021.2, under which the defendant was convicted of second-degree (felony) murder. The Southern District explained:

> When our legislature rewrote Missouri's felony-murder rule in 1984, it was "with the explicit expression of intention that punishment for the felony murder 'shall be in addition to the punishment for commission of a related felony or attempted felony, other than murder or manslaughter.' § 565.021.2 RSMo 1986."

[*State v.*] *Owens*, 849 S.W.2d [581,] 584 [ (Mo.App.W.D.1993) ]. Inasmuch as our felony-murder statute "expressly intends multiple punishments for both second degree felony murder and the underlying felony, such punishments when imposed in a single trial do not constitute double jeopardy." *Id.*

*Id.* at 666. Thus, citing this court's decision in *Owens*, the Southern district found that Coody's double jeopardy rights were not violated when he was sentenced as a prior and persistent offender to twenty years for abuse of a child under section 568.060 RSMo Cum.Supp.1990 and life imprisonment for second-degree murder under section 565.021.1(2) RSMo 1986. *Id.*

We find the Southern District's analysis of this issue in *Coody* persuasive and agree with its reasoning. Thus, it is clear from the face of the record that the trial court did have the power to enter the challenged convictions, so review for plain error is not warranted.

BRECKENRIDGE, P.J., and SMITH, J., concur.